**Matthew A. Levin, OSB #003054**
MattLevin@MHGM.com
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204-3730
Tel: (503) 295-3085
Fax: (503) 323-9105

FILED 9 MAR '12 16:29USDC-ORP

       Attorneys for Plaintiff


             IN THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF OREGON

                   PORTLAND DIVISION


**ELLISLAB, INC.**, an Oregon corporation,

                        Plaintiff,

       vs.

**GIPPY'S INTERNET SOLUTIONS,**
**L.L.C.**, a Minnesota limited liability
company,

                  Defendant.

CV 12 - 432 - HU

**COMPLAINT**

**(Breach of Contract, Federal Trademark
Infringement, Federal Unfair
Competition/False Designation of Origin,
Federal Unfair Competition/Trademark
Dilution, Federal Unfair
Competition/False Advertisement,  State
Trademark Infringement, State
Trademark Dilution )**

**DEMAND FOR JURY TRIAL**

       Plaintiff EllisLab, Inc. states and alleges:

                   **THE PARTIES**

                        1.

       Plaintiff EllisLab is a corporation duly organized and existing under the laws of the State

of Oregon, with its principal place of business at 14525 SW Millikan Way, #63291, Beaverton,

Oregon, 97005. EllisLab is a fast growing technology company that develops internet-enabling

**Page 1 -  COMPLAINT**

#45899

software and services used by hundreds of thousands of people around the world. It creates software applications, products and services that enable people to use the internet in meaningful ways. Its software products, which include ExpressionEngine, a powerful Content Management System, MojoMotor, a website publishing engine, and CodeIgniter, a tool-kit for web developers, can be purchased at http://ellislab.com/products.

2.

Defendant Gippy's Internet Solutions, L.L.C. ("Gippy's"), is a limited liability company organized under the laws of the State of Minnesota, with its principal place of business at 331 2nd Ave., Suite #540, Minneapolis, Minnesota, 55401. Upon information and belief, each of defendant's members are citizens of Minnesota. Defendant operates web hosting websites at URLs http://www.gippy.net and http://www.enginehosting.com and has an assumed business name "Engine Hosting."

**JURISDICTION AND VENUE**

3.

This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and Oregon state law. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Jurisdiction is also conferred on this Court by virtue of 28 U.S.C. § 1332(a)(2) (diversity of citizenship). This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(a).

4.

Defendant is subject to personal jurisdiction in the state of Oregon because defendant directs its unlawful conduct into this district and its unlawful conduct causes injury within this district. Defendant has purposefully directed its unlawful conduct to the State of Oregon by advertising and soliciting business within this district through its unlawful use of plaintiff's marks as alleged below. Defendant also directs its business activities to the State of Oregon through the use of a fully interactive internet website, which includes options for purchasing goods and services. Defendant also solicits business from web users within this district, and, on

information and belief, sells products and services to residents of this district. Defendant's activities in Oregon, described above, are continuous, systematic, substantial and not isolated.

5.

The amount in controversy exceeds $75,000.

6.

Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) and (c) because defendant may be found in this district for purposes of personal jurisdiction as alleged above.

## BACKGROUND

7.

Plaintiff EllisLab is a software company that was founded on the idea that business people should have the ability to maintain their website content without the need for technical expertise. Plaintiff named the company, and the first iteration of its software, "pMachine" (Publishing Machine), and released the program in 2002. Within a few months it was featured in major magazines like Mac World and Mac Addict, and in a book about blogging published by McGraw/Hill.

8.

Plaintiff owns the pMachine trademark for content management software.

9.

In 2004, plaintiff released the next-generation publishing system, called ExpressionEngine, and continued to develop and release software to make website maintenance easier for everyone.

10.

Plaintiff owns the ExpressionEngine trademark for content management software.

11.

In 2007, plaintiff changed the name of the company to EllisLab, Inc., to better reflect its growing range of products and services.

**Page 3 -   COMPLAINT**

12.

Plaintiff's brand name and trademarks are widely recognized by the consuming public of the United States.

13.

Plaintiff EllisLab provides ExpressionEngine products in commerce in this forum and elsewhere in the United States.

14.

In order to publish a website online, a website owner needs a "web host." The web host stores the pages of a website and makes them available to computers connected to the Internet.

15.

Defendant is a web host.

16.

In order to better serve its pMachine software customers, in 2002, plaintiff entered into an agreement with defendant wherein plaintiff validly licensed its marks to defendant and provided a link for customers from plaintiff's website (where users could purchase plaintiff's web publishing software) to a website called www.pmachinehosting.com. At www.pmachinehosting.com, customers could purchase web hosting services tailored to work with plaintiff's web publishing software, as well as packages that bundled together both plaintiff's software and the web hosting services.

17.

Plaintiff licensed its marks to defendant in order to drive customers to defendant's website and to create a seamless website publishing and web hosting experience for plaintiff's customers.

18.

Plaintiff and defendant agreed that in exchange for the license to use plaintiff's marks and the ability to serve customers originating from plaintiff's website, the parties would share the revenues generated by www.pmachinehosting.com.

19.

After plaintiff released its ExpressionEngine software, the parties created
www.enginehosting.com to better reflect its association with ExpressionEngine, and agreed that
in exchange for the use of plaintiff's marks and the ability to serve customers originating from
plaintiff's website, the parties would share the revenues generated by www.enginehosting.com.

20.

Plaintiff created and first used the names and trademarks "pMachine Hosting,"
"EngineHosting," "www.pmachinehosting.com," and "www.enginehosting.com" in connection
with web publishing software and web hosting and related services.  All of these marks were
based on plaintiff's trademarks for its existing software products.

21.

Plaintiff was also the first to use "pMachine Hosting" and "EngineHosting" in commerce
in connection with web hosting and related services.

22.

Since 2007, the name "EngineHosting" has been listed as an asset of plaintiff's on its
website, and defendant has never objected to this explicit statement of ownership by plaintiff.

23.

Plaintiff drove the creative direction of and built the websites
www.pmachinehosting.com, www.enginehosting.com (the "Hosting Websites"), the customer
control panels, and all related assets, creating the seamless user experience.  As such, plaintiff
always exercised its right to control the quality of the use of its marks and the goods and services
offered under its marks at these and other websites.

24.

In or about February, 2012, plaintiff learned that defendant had been secretly
underpaying plaintiff on plaintiff's share of the revenues generated by the Hosting Websites.

25.

Defendant underpaid plaintiff by underreporting the revenues generated by the Hosting
Websites.

**Page 5 -  COMPLAINT**

26.

Defendant also underpaid plaintiff by signing up customers for "custom" hosting packages and unilaterally deciding to pay plaintiff nothing for the revenues generated by those customers.

27.

Plaintiff also learned that on November 3, 2011, defendant filed trademark applications for the names "EngineHosting" and "EngineHosting Powering the Dynamic Web!" (Serial Numbers 85463800 and 85463973 respectively). Defendant did so without informing plaintiff. Defendant does not own either mark.

28.

Recently, the United States Patent and Trademark Office issued office actions objecting to registration of both of the pending applications. The primary objection is that the mark is not distinctive because it describes the services.

29.

Plaintiff also intends to oppose the applications at the United States Patent and Trademark Office.

30.

Plaintiff also learned that defendant has begun using the URL "www.EngineInternet.com" to generate traffic for the www.EngineHosting.com site.

31.

After learning of defendant's wrongful actions, plaintiff attempted to work with defendant to resolve the issues. When plaintiff's efforts were unsuccessful, plaintiff terminated the license to defendant to use plaintiff's marks.

32.

Defendant then revised its website so that it could continue to benefit from plaintiff's marks, but without paying any amounts to plaintiff.

33.

Defendant has used "EngineInternet" and "EngineHosting" and the Hosting Websites to provide goods and provide services in competition with EllisLab's products and services in this forum and elsewhere in the United States.

34.

Defendant also uses plaintiff's mark "ExpressionEngine" on the Hosting Websites (both visibly and in metadata to drive people searching for plaintiff's products to defendant's website) to provide goods and provide services in competition with EllisLab's products and services in this forum and elsewhere in the United States.

35.

Defendant's unlicensed use of "EngineInternet," "EngineHosting" and "ExpressionEngine" is likely to cause confusion among consumers in the United States, including in this district.

36.

Defendant's infringing activities are targeted at the same class of consumers who purchase plaintiff's ExpressionEngine product.

37.

EllisLab's ownership of a federal trademark registration for ExpressionEngine is a matter of public record.

38.

The table below summarizes two of EllisLab's federal trademark registrations (referred to collectively as "the EllisLab's Registrations"):

| Mark | Registration Number and Reg. Date | Goods/Services |
|------|-----------------------------------|----------------|
| PMachine | Reg. No.: 3211244<br>Reg. Date: February 20, 2007 | Computer software for creating and managing web-based content. |
| ExpressionEngine | Reg. No.: 3211246<br>Reg. Date: February 20, 2007 | Computer software for creating and managing web-based content. |

39.

Registration 3211244 is valid and subsisting, and has not been canceled.

40.

A copy of United States Trademark Registration 3211244 is attached as Exhibit 1.

41.

Registration 3211244 constitutes prima facie evidence of the validity of the registered mark, and of EllisLab's ownership of said registration and mark.

42.

Registration 3211246 is valid and subsisting, and has not been canceled.

43.

A copy of United States Trademark Registration 3211246 is attached as Exhibit 2.

44.

Registration 3211246 constitutes prima facie evidence of the validity of the registered mark, and of EllisLab's ownership of said registration and mark.

45.

EllisLab is the owner of the trademarks "EngineInternet" and "EngineHosting" both under the parties' agreement and pursuant to common law.

46.

As a result of EllisLab's continuous and (but for infringement) exclusive use of its distinctive trademarks, and the commercial success of its goods and services provided under those marks, EllisLab has achieved significant brand name recognition in its marks (the "EllisLab's marks").

47.

The EllisLab's marks have come to represent the valuable goodwill and reputation of EllisLab in the market for high quality goods and services including those identified in the EllisLab's Registrations listed above and other related goods and services. As a result, the consuming public has come to expect that such goods and services marketed and sold under the EllisLab's marks, or confusingly similar names, are associated with EllisLab.

**Page 8 -  COMPLAINT**

48.

Defendant does not offer for sale any of plaintiff's products.

49.

Defendant's use of plaintiff's EllisLab's marks and confusingly similar names is likely to and does cause consumer confusion. Users will falsely assume that defendant is authorized to use plaintiff's EllisLab's marks, or is affiliated with and may offer EllisLab's products. Furthermore, defendant offers a competitive line of services and products (including add-on applications) for sale. Consumers will falsely assume that defendant's products have the same qualities and attributes as plaintiff's software and other products sold under the EllisLab's marks and/or are sponsored or licensed by, or affiliated with, plaintiff.

50.

Defendant seeks and receives a direct material benefit from its use of plaintiff's marks.

### FIRST CLAIM FOR RELIEF

### (Breach of Contract)

51.

Plaintiff realleges and restates the foregoing paragraphs.

52.

The parties had an agreement that in exchange for the license to use plaintiff's marks and the ability to receive customers from plaintiff's website, they would share the revenues generated by www.pmachinehosting.com and www.enginehosting.com.

53.

Defendant materially breached the agreement by underreporting revenues and customers, and thereby underpaying plaintiff.

54.

Plaintiff performed under the agreement.

55.

As a result of defendant's breaches of the agreement, plaintiff has suffered damages in an amount to be proven at trial but exceeding $75,000, plus prejudgment interest thereon.

## SECOND CLAIM FOR RELIEF

**(Federal Trademark Infringement – 15 U.S.C. §§ 1114(1)(a) and 1116(d))**

56.

Plaintiff realleges and restates the foregoing paragraphs.

57.

Defendant's use of the EllisLab's marks and words confusingly similar to the EllisLab's marks is a use in commerce of plaintiff's marks that is likely to cause consumer confusion or mistake, or to deceive.

58.

Defendant is thus liable under 15 U.S.C. § 1114(1)(a) for infringement of plaintiff's registered EllisLab's marks.

59.

Defendant's website uses counterfeits of the EllisLab's marks as defined in 15 U.S.C §1116.

60.

Pursuant to 15 U.S.C. § 1117(a), plaintiff is entitled to recover defendant's profits and the costs of the action.

61.

Because defendant's actions in using plaintiff's registered EllisLab's marks was intentional and in bad faith, the court should enter an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

62.

This case is exceptional under 15 U.S.C. § 1117(a)(3), and plaintiff should be awarded its reasonable attorney fees and other damages for plaintiff's use of a counterfeit mark.

63.

In addition, because plaintiff's remedies under 15 U.S.C. § 1117(a), while necessary, are not sufficient to fully protect plaintiff's continuing interest in preserving its marks against future infringement by defendant, plaintiff is entitled to an injunction against defendant's use in the future of plaintiff's EllisLab's marks, or any colorable imitation or confusingly similar variation of plaintiff's EllisLab's marks, including specifically "pMachine Hosting," "Engine Hosting," "EngineInternet," "www.pmachinehosting.com," "www.enginehosting.com," and "www.EngineInternet.com," in any advertisement for the sale of any product other than genuine EllisLab products.

### THIRD CLAIM FOR RELIEF

**(Federal Unfair Competition/False Designation of Origin,
15 U.S.C. § 1125(a); Lanham Act 543(a))**

64.

Plaintiff realleges and restates the foregoing paragraphs.

65.

Defendant's use of the EllisLab's marks and names confusingly similar to EllisLab's marks is a use in commerce in connection with defendant's products that is likely to cause consumer confusion or mistake, or to deceive as to the affiliation, connection, association, sponsorship, or approval of defendant's goods by plaintiff.

66.

Defendant is thus liable under 15 U.S.C. § 1125(a) for unfair competition.

67.

Pursuant to 15 U.S.C. § 1117(a), plaintiff is entitled to recover defendant's profits and the costs of the action.

68.

Because defendant's actions were intentional and in bad faith, the court should enter an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

69.

This case is exceptional under 15 U.S.C. § 1117(a)(3) and plaintiff should be awarded its reasonable attorney fees.

70.

In addition, because plaintiff's remedies under 15 U.S.C. § 1117(a), while necessary, are not sufficient to fully protect plaintiff's continuing interest in preserving its marks against future acts of unfair competition by defendant, plaintiff is entitled to an injunction against defendant's use in the future of plaintiff's EllisLab's marks, or any colorable imitation or confusingly similar variation of plaintiff's EllisLab's marks, including specifically "pMachine Hosting," "Engine Hosting," "EngineInternet," "www.pmachinehosting.com," "www.enginehosting.com," and "www.EngineInternet.com," for any advertisement for the sale of any product other than genuine EllisLab products.

## FOURTH CLAIM FOR RELIEF

### (Federal Unfair Competition/Trademark Dilution, 15 U.S.C. § 1125(c); Lanham Act § 43(c))

71.

Plaintiff realleges and restates the foregoing paragraphs.

72.

Plaintiff's EllisLab's marks are distinctive and famous marks under the common law and under the factors described for protection against dilution in 15 U.S.C. § 1125(c)(2)(A) and transcend the specific classes of goods and services for which plaintiff has registered its EllisLab's marks.

73.

Defendant's use of plaintiff's EllisLab's marks is a use in commerce of plaintiff's registered and famous EllisLab's marks.

74.

Defendant's use of plaintiff's EllisLab's marks began after plaintiff's EllisLab's marks became famous.

75.

Defendant's use of plaintiff's EllisLab's marks is likely to cause dilution by blurring of EllisLab's famous EllisLab's marks under 15 U.S.C.§ 1125(c)(2)(B). Defendant is using plaintiff's exact or virtually the same marks; plaintiff's colorable imitation or confusingly similar variation of plaintiff's EllisLab's marks, in any advertisement for the sale of any product other than genuine EllisLab products.

76.

In addition, because, on information and belief, defendant first used plaintiff's EllisLab's marks in commerce after October 6, 2006 and because defendant willfully intended to trade on the recognition of plaintiff's famous EllisLab's marks, pursuant to 15 U.S.C. § 1125(5)(A) and (B)(i), plaintiff is also entitled to the remedies set forth in 15 U.S.C. § 1117(a).

77.

Under 15 U.S.C. § 1117(a), plaintiff is entitled to recover defendant's profits and the costs of the action.

78.

Because defendant's actions in using plaintiff's registered EllisLab's marks were intentional and in bad faith, the court should enter an award of enhanced damages under 15 U.S.C. § 1117(a)(3) in an amount up to three times the actual damages.

79.

This case is exceptional under 15 U.S.C. § 1117(a)(3) and plaintiff should be awarded its reasonable attorney fees.

## FIFTH CLAIM FOR RELIEF

### (Federal Unfair Competition/False Advertisement,
### 15 U.S.C. § 1125(a); Lanham Act 543(a))

80.

Plaintiff realleges and restates the foregoing paragraphs.

81.

By using EllisLab's marks to lead consumers to defendant's website, defendant has made statements of fact in commercial advertisement or promotion that are false and are likely to mislead or confuse consumers about EllisLab's products.

82.

Defendant has used the EllisLab marks in interstate commerce, and the use has the tendency to deceive a substantial segment of its audience and are likely to influence the purchasing decision. As such, defendant is in violation of 15 U.S.C. § 1125(a).

83.

Defendant's false and misleading actions have materially injured and continue to injure plaintiff's business by, including but not limited to, depriving plaintiff of sales and customers, injuring plaintiff's reputation and goodwill, and causing plaintiff to sustain monetary damages, loss and injury.

84.

Defendant has engaged in and continues to engage in these activities knowingly and willfully.

85.

Defendant's false statements are likely to cause irreparable injury to plaintiff, its business reputation, and the goodwill associated with its business. Plaintiff has no adequate remedy at law and will be irreparably injured unless and until defendant is preliminarily and permanently enjoined from making false statements in connection with advertising related to defendant's business.

86.

Upon information and belief, defendant committed the acts alleged with the intent to cause confusion, or to cause mistake, or to deceive. Under such circumstances, damages should be increased by three times the actual damage and reasonable attorney fees and costs should be assessed under 15 U.S.C. § 1117.

## SIXTH CLAIM FOR RELIEF

### (State Trademark Infringement – ORS 647.095)

87.

Plaintiff realleges and restates the foregoing paragraphs.

88.

Defendant's unauthorized use in commerce of plaintiff's EllisLab's marks is likely to confuse and deceive consumers, or cause consumers to believe mistakenly that defendant and/or its products are affiliated, connected, or associated with plaintiff or approved by plaintiff.

89.

Defendant is thus liable under ORS 647.095 for infringement of plaintiff's registered and common law EllisLab's marks.

90.

Pursuant to ORS 647.105, plaintiff is entitled to recover the greater of $10,000 or the sum of: (1) an amount not to exceed three times the profits derived by the defendant from the wrongful manufacture, use, display or sale of plaintiff's EllisLab's marks; and (2) an amount not to exceed three times all damages suffered by plaintiff because of defendant's wrongful use or display of plaintiff's EllisLab's marks.

## SEVENTH CLAIM FOR RELIEF

### (State Trademark Dilution – ORS 647.107)

91.

Plaintiff realleges and restates the foregoing paragraphs.

92.

Defendant's use of plaintiff's EllisLab's marks is likely to cause injury to plaintiff's business reputation and/or dilution of the distinctive quality of plaintiff's EllisLab's marks. Defendant is using plaintiff's exact or virtually the same marks; plaintiff's marks are famous and have acquired substantial distinctiveness since their first use in commerce; plaintiff exclusively uses its EllisLab's marks on EllisLabs products; the EllisLab's marks are widely recognized; defendant intended to create an association with plaintiff's marks in order to divert business to itself; and there is no actual association between defendant and plaintiff.

93.

Pursuant to ORS 647.107, plaintiff is entitled to an injunction against defendant's use in the future of plaintiff's EllisLab's marks, or any colorable imitation or confusingly similar variation of plaintiff's EllisLab's marks, in any advertisement for the sale of any product other than genuine EllisLab products.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

1.      Awarding plaintiff up to three times defendant's profits and up to three times the amount found as actual damages for defendant's infringement of plaintiff's registered EllisLab's marks, unfair competition, and willful dilution by blurring of plaintiff's famous marks, as stated herein.

2.      Entering an injunction against (a) defendant's use in the future of plaintiff's registered EllisLab's marks, or any colorable imitation or confusingly similar variation of plaintiff's EllisLab's marks, in any advertisement for the sale of any good or service other than genuine EllisLabs products, and (b) any other infringing use or use that dilutes the distinctive quality of plaintiff's EllisLab's marks such as in or as the title for any advertisement for the sale of any product other than genuine EllisLabs products.

3.      Awarding plaintiff its costs of the action and its reasonable attorney fees; and

4.    Awarding plaintiff such other and further relief as the court deems equitable, just, and appropriate.

Plaintiff hereby demands a trial by jury on all issues raised by the Complaint so triable.

DATED this 9th day of March, 2012.

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.

By: _____
Matthew A. Levin
OSB #003054
(503) 295-3085
Of Attorneys for Plaintiff

ELLIG\290339

**Page 17 - COMPLAINT**