Jeffrey A. Bowersox, OSB #81442
BOWERSOX LAW FIRM, P.C.
5285 Meadows Rd., Suite 320
Lake Oswego, OR 97035
PH:  (503) 452-5858
Fax: (503) 345-6893
Jeffrey@bowersoxlaw.com

Christopher K. Sandberg, Reg. No. 95485
*Pro Hac Vice Admission to be submitted*
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
PH: (612) 339-6600
Fax: (612) 339-0981
Email: cksandberg@locklaw.com
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ELLISLAB, INC., an Oregon corporation,<br>     Plaintiff,<br><br>v.<br><br>GIPPY'S INTERNET SOLUTIONS, L.L.C.,<br>    a Minnesota limited liability company,<br>    Defendant. | CV No.: 3:12-cv-00432-HU<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE <u>TO TRANSFER</u>**<br>Oral Argument Requested |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>TABLE OF CONENTS</u>

BACKGROUND ...................................................................... 6

FACTS .................................................................................... 7

ARGUMENT ......................................................................... 8

  1.  There is no Basis For General Jurisdiction Over Gippy's in Oregon  ......... 9

  2.  There is no Basis For Specific Jurisdiction Over Gippy's in Oregon .......... 12
     a.  Gippy's Has Not "Availed" Itself Of The Privilege of
     Conducting Activities in Oregon ............................................ 14
     b.  Gippy's Has Not Directed Its Activities at Oregon ................................ 14
     c.  Exercise of jurisdiction over Gippy's by this Court would
      not be reasonable. ...................................................... 19

  3.  In The Alternative, Transfer Of This Matter To Minnesota
    Would Be Appropriate ........................................................ 22
     a.  The factors used by courts in reviewing requests for transfer
      favor transfer to Minnesota ................................................ 22
     b.  The interest in avoiding-piecemeal-litigation factor also supports
      transfer to the District of Minnesota ....................................... 24

CONCLUSION ...................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**<u>PAGE</u>**

### <u>*Cases*</u>

*Bancroft & Masters, Inc. v. Augusta National, Inc.*
223 F.3d 1082 (9th Cir.2000) ..................................................................... 10

*Bauman v. DaimlerChrysler Corp.,*
644 F.3d 909 (9th Cir.2011) ....................................................................... 21

*Brand v. Menlove Dodge,*
796 F.2d 1070 (9th Cir.1986) ...................................................................... 9

*Brunswick Bowling & Billiards Corp. v. Pool Table Plus, Inc.,*
No. 04 C 7624, 2005 WL 396304, *5 (N.D. Ill. Feb. 16, 2005) ................... 24

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) .................................................................................... 8

*Caddy_____*
1156 ........................................................................................................... 15

*Calder v. Jones,*
465 U.S. 783 (1984) ................................................................................... 14

*Collegesource, Inc. v. Academyone, Inc.,*
653 F.3d 1066 (9th Cir. 2010) ................................................................... 12

*Corp. Inv. Bus. Brokers v. Melcher,*
824 F.2d 786 (9th Cir.1987) ...................................................................... 21

*Cosmetic Warriors Ltd.,*
723 F.Supp.2d 1102 ................................................................................... 24

*Cybersell, Inc. v. Cybersell, Inc.,*
130 F.3d 414 (9th Cir.1997) ...................................................................... 12

*Dole Food,*
303 F.3d at 1114 ........................................................................................ 20

*Fireman's Fund Ins. Co. v. Nat. Bank of Coops.,*
103 F.3d 888 (9th Cir.1996) ........................................................................ 8

*Gates Learjet Corp. v. Jensen,*
743 F.2d 1325 (9th Cir.1984) ....................................................................... 9

*H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.,*
979 F.Supp. 627 (N.D.Ill.1997).................................................................... 24

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
328 F.3d 1122 (9th Cir. 2002) ....................................................................... 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984) ....................................................................................... 9

*Hirsch v. Blue Cross, Blue Shield of Kansas City,*
800 F.2d 1474 (9th Cir.1986) ....................................................................... 9

*In re Apple, Inc.,*
602 F.3d 909 (8th Cir. 2010) ....................................................................... 23

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945) ....................................................................................... 9

*John Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ......................................................................... 9

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) ....................................................................... 23

*Lake v. Lake,*
817 F.2d 1416 (9thCir.1987) ....................................................................... 12

*Lu v. Belzberg,*
834 F.2d 730 (9th Cir. 1987) ....................................................................... 23

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
647 F.3d 1218 (9th Cir. 2011) ..................................................................... 11

*May Dept. Stores Co. v. Wilansky,*
900 F.Supp. 1154 (E.D.Mo.1995) ............................................................... 24

*Miller v. Nippon Carbon Co.,*
528 F.3d 1087 (8th Cir. 2008) ....................................................................... 8

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
52 F.3d 267 (9th Cir.1995) ............................................................................. 12

*Panavision International LP v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998) ....................................................................... 16

*Pebble Beach Company  v.  Caddy,*
453 F.3d 1151 (9th Cir. 2006) ....................................................................... 13

*Rio Properties, Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002) ....................................................................... 16

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ......................................................................... 12

*Sinatra v. National Inquirer, Inc.,*
854 F.2d 1191 (9th Cir. 1983) ....................................................................... 21

*Stewart Org. v. Ricoh Corp.,*
487 U.S. 22 (1988) ......................................................................................... 22

*The Bremen v. Zapata Off-Shore Co.,*
407 U. S. 1 (1972) .......................................................................................... 19

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ......................................................................................... 8

*Zippo Mfg. Co. v. Zippo Dot Com Inc.,*
952 F.Supp. 1119 (W.D.Pa. 1997) ................................................................ 11

## ___Other___

15 U.S.C. §1051 ..............................................................................................6
28 U.S.C. §1391 ..............................................................................................6
28 U.S.C. §1404 ............................................................................................ 22
Or.R.Civ.P. 4 ................................................................................................... 8

On April 23, 2012, Plaintiff EllisLab, Inc. ("EllisLab") filed its Amended Complaint in the above-captioned matter.  Defendant Gippy's Internet Solutions, LCC ("Gippy's") has moved the Court to dismiss the Amended Complaint, or in the alternative to transfer the matter to the District of Minnesota.

## BACKGROUND

In its Amended Complaint, EllisLab raises a series of claims against Gippy's based in contract law and in the Lanham Act, 15 U.S.C. §1051 *et seq*.  EllisLab asserts that Gippy's is subject to the jurisdiction of this Court to hear those claims because:

> …Gippy's directs its unlawful conduct into this district and its unlawful conduct causes injury within this district. Gippy's has purposefully directed its unlawful conduct to the State of Oregon by advertising and soliciting business within this district through its unlawful use of EllisLab's marks as alleged below. Gippy's also directs its business activities to the state of Oregon through the use of a fully interactive internet website, which includes options for purchasing goods and services. Gippy's also solicits business from web users within this district, and, on information and belief, sells products and services to residents of this district. Gippy's activities in Oregon, described above, are continuous, systematic, substantial and not isolated.

Amended Complaint at ¶4.

EllisLab further asserts:

> Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) and (c) because Gippy's may be found in this district for purposes of personal jurisdiction as alleged above.

Amended Complaint at ¶6.

EllisLabs' assertions are in error, and this court is not the proper forum for the claims raised in the Amended Complaint.

Page 6 - MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER

## FACTS

As set out in the Amended Complaint, EllisLab is a software company located in Beaverton, Oregon.  Amended Complaint at ¶7.  Gippy's is a provider of business-focused web hosting services, and is located in Minnesota.  Amended Complaint at ¶2; ¶15. [1]

Gippy's has worked with EllisLab for the last ten years, sharing the revenues from its website with EllisLab and driving sales of EllisLab's software to EllisLab.  Amended Complaint at ¶¶16-18.  The parties initially worked under oral agreements made in 2002 and 2006.  Amended Complaint at ¶16; ¶19.  Although not disclosed in the Amended Complaint, the parties entered into a written agreement, with significantly altered terms, in 2007.  Declaration of Nevin Lyne ("Lyne Declaration") at ¶11.

Despite Gippy's having performed as called for in the parties' 2007 agreement, in February 2012 EllisLab for the first time asserted that it had not been fully and properly paid by Gippy's.  Amended Complaint at ¶25.  EllisLab subsequent unilaterally terminated the parties 2007 agreement, and initiated this action, which contains claims based upon asserted breach of contract, trademark infringement, and related Lanham Act bases.  Amended Complaint at ¶¶52-82.

---

[1] While Gippy's has recited the factual statements made in the Amended Complaint for the purpose of framing the case as EllisLab has filed it, Gippy's does not agree with or admit much of the fact pattern alleged by EllisLab.  The recital of EllisLab's claims is done solely for purposes of providing background for this Memorandum.

# ARGUMENT

The Due Process Clause requires that "minimum contacts" exist between a nonresident defendant and the putative forum state before a court can exercise jurisdiction over that non-resident defendant. *See World-Wide Volkswagen Corp. v. Wood*son, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  There is no dispute that Gippy's is a non-resident defendant: Gippys is a Minnesota limited liability company with its principal place of business in Minnesota, and each of its members are citizens of Minnesota. Amended Complaint at ¶2.  As a result, EllisLabs must demonstrate that this court has jurisdiction over Gippy's. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1128-29 (9th Cir. 2003).

As a general principle, the Court should examine whether Gippy's, a non-resident defendant, has sufficient "minimum contacts" with Oregon, the requested forum. *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8thCir. 2008).   If Gippy's has the sufficient minimum contacts with Oregon, then the Court should then consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quotation omitted)

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.,* 103 F.3d 888, 893 (9th Cir.1996).  Both Oregon's long-arm rule (Or.R.Civ.P. 4) and Rule 4(k)(2) of the Federal Rules of Civil Procedure require compliance with due process requirements. *See,*

*John Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001) (applying Rule 4(k)(2) as a federal long-arm statute). For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

    1.  <u>There Is No Basis For General Jurisdiction Over Gippy's in Oregon.</u>

A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See, Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The standard for establishing this sort of general jurisdiction is "fairly high," *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts be of the sort that approximate physical presence. *See, Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir.1984).

In this Circuit, the factors to be taken into consideration for an analysis of general jurisdiction are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *See, Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir.1986). Where a corporation formed and located in Georgia was sued in California, the Court rejected general jurisdiction because the defendant was not registered or licensed to do business in California, paid no taxes in California, maintained no bank accounts in California, and targeted no print, television, or radio advertising

toward California.    The defendant's occasional, unsolicited sales of tournament tickets and merchandise to California residents were found to be insufficient to create general jurisdiction.  Its website was "passive" – that is, consumers could not use it to make purchases.  Finally, the fact that the defendant had license agreements with two television networks and a handful of California vendors constituted doing "business with" California, but did not constitute doing "business in" California.   The Court held that, "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta National, Inc.* 223 F.3d 1082, 1086 (9th Cir.2000).

Here, Gippy's has never been registered or licensed to do business in Oregon, has paid no taxes in Oregon, has never had a bank account in Oregon, and has never targeted any print, television, or radio advertising toward Oregon.   Lyne Declaration at ¶ 22-23.

Gippy's has had been between 90 and 110 clients that signed up from the state of Oregon since Gippy's began working with EllisLab ten years ago.  Not all of those clients have been active at the same time, and not all are presently clients of Gippy's.  When compared to the total number of Gippy's clients over that same period - approximately 6900 – is becomes clear that clients located in Oregon have represented only about 1.5% of Gippy's hosting clients. Lyne Declaration at ¶¶ 15-17.

While Gippy's website is interactive – it permits user to sign up for hosting services from Gippy's – there has never been any marketing activity by Gippy's directed at Oregon residents by print, television, or radio advertising or by email or other electronic solicitation.  Lyne Declaration at ¶23.   The handful of sales to Oregon

residents have been made because the purchasers found Gippy's website and came to it to make their purchases.

EllisLabs was careful to allege that Gippy's website is "fully interactive" (Amended Complaint at ¶4), presumably hoping to use that assertion to bolster a claim of general jurisdiction under a "sliding scale" rubric such as set out in *Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997).  Under a cursory *Zippo* analysis, if a website is interactive, and allows a defendant to enter into contracts with residents of a foreign jurisdiction "that involve the knowing and repeated transmission of computer files over the Internet", jurisdiction can be found.  That simplistic form of analysis is not appropriate here.  *Zippo* is not helpful in a general jurisdiction analysis, where the essential question is whether a defendant's contacts with the requested forum state have been "substantial, continuous, and systematic."  *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011).

Even in the context of an interactive website, a defendant is only subject to general jurisdiction when there is evidence of that defendant's intent to "sit down and make itself at home" in the foreign state.  *Mavrix*, 647 F.3d at 1227.  No such intent can be shown or inferred here.  Gippy's has made no efforts to seek out Oregon clients, and has not been successful in securing **any** major or high-revenue generating clients in Oregon.  Lyne Declaration at ¶¶19, 23.  What is needed for general jurisdiction is continuous corporate operations in a state that are so substantial and of such a nature as to justify suit on causes of action arising from dealings distinct from those activities.  No such continuous

corporate operations in Oregon are alleged by EllisLabs, and the sporadic, low-volume sign-ups of small hosting clients cannot be found to be substantial operations in the state.

Marketing to forum residents, unless it results in substantial and continuous commerce with the forum, does not support general jurisdiction. *Collegesource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2010). Gippy's minimal level of clients in Oregon, coupled with the modest revenues those clients generate, is not the "substantial" commerce needed for general jurisdiction. General jurisdiction over Gippy's simply cannot be found here.

2. There Is No Basis For Specific Jurisdiction Over Gippy's in Oregon.

Even though there is no general jurisdiction over Gippy's in Oregon, an Oregon court may still exercise personal jurisdiction if the matter arises out of certain forum-related acts. Specific jurisdiction exists only if a defendant's "minimum contacts" meet the Supreme Court's directive. The Ninth Circuit employs a three-part test to analyze when there are the necessary "minimum contacts": (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Bancroft,* 223 F.3d at 1086, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir.1997), *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9thCir.1987). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th

Cir.1995). The plaintiff bears the burden of satisfying the first two prongs of the "minimum contacts" test. *Schwarzenegger,* 374 F.3d at 802 (internal citations omitted).

Under the first prong of the "minimum contacts" test, EllisLabs has the burden of establishing that Gippy's has performed some act or consummated some transaction within the forum or otherwise purposefully availed itself of the privileges of conducting activities in Oregon. *Bancroft,* 223 F.3d at 1086. This has been refined by the Court to mean whether Gippy's has either (1) "purposefully availed" itself of the privilege of conducting activities in Oregon, or (2) "purposefully directed" its activities toward the forum. *Schwarzenegger,* 374 F.3d at 802. The terms "availed" and "directed" are two distinct concepts." *Pebble Beach Company v. Caddy,* 453 F.3d 1151, 1155 (9th Cir. 2006). Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. *Schwarzenegger, id.* at 803. Evidence of direction generally consists of action taking place outside the forum that is directed at the forum, including evidence of purposeful direction such as distribution and advertising. *Id.*

    a.  <u>Gippy's Has Not "Availed" Itself Of The Privilege of Conducting</u>
<u>Activities in Oregon</u>.

Evidence of availment is typically action taking place <u>in the forum</u> that invokes the benefits and protections of the laws in the forum. *Schwarzenegger, id.* at 803. EllisLabs had not alleged that Gippy's has taken any actions within the state of Oregon that would show Gippy's intent to invoke the benefits or protections of Oregon law.  To the contrary, EllisLabs has only asserted that Gippy's has done things outside the state and has "direct[ed] its unlawful conduct **into this district**…"  Amended Complaint at ¶4 (emphasis added).  Jurisdiction over Gippy's thus cannot rest on an "availment" basis.

    b.  <u>Gippy's Has Not Directed Its Activities at Oregon.</u>

In *Calder v. Jones,* the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).  Specific-personal jurisdiction over a defendant is proper only where a plaintiff shows that the defendant knew that the "brunt" of the alleged injury would be felt by the plaintiff in the forum and that the defendant "intentionally targeted" the forum.  To satisfy the *Calder* test in this Circuit, a defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft,* 223 F.3d at 1087-1088.  As to the third prong of that test, "something more" is needed in addition to a mere foreseeable effect. *Id.* at 1087:

> Subsequent cases have struggled somewhat with *Calder's* import, recognizing that the case cannot stand for the broad proposition that

> a foreign act with foreseeable effects in the forum state will always
> give rise to specific jurisdiction. We have said that there must be
> "something more". . . . We now conclude that "something more" is
> what the Supreme Court described as "express aiming" at the forum
> state. [citation omitted] Thus, the determinative question here is
> whether Caddy's actions were "something more" — precisely,
> **whether his conduct was expressly aimed at** California or
> alternatively the United States.

*Caddy, id.* at 1156 (quoting *Bancroft*) (emphasis added).

In *Caddy*, the Court held that a defendant's actions were not "expressly aimed" at the forum state when the only acts identified by the plaintiff were the defendant's website and the use of the name "Pebble Beach" in the domain name for that website. The *Caddy* court determined that those acts were not "aimed at" California and, regardless of foreseeable effect, were insufficient to establish jurisdiction.

Here, EllisLabs has alleged that Gippy's has "advertised and solicited business within this district through its unlawful use of EllisLabs' marks….Gippy's also directs its business activities to the state of Oregon through use of a fully interactive internet website…." Amended Complaint at ¶4. Just as in *Caddy*, Gippy's use of a specific name (which does not even have the geographic connotations of the "Pebble Beach" name) and existence of a website do not by themselves rise to the level of "expressly aiming at" Oregon necessary to establish jurisdiction in this Court.

These actions identified by EllisLabs as grounds for jurisdiction take place outside Oregon: Gippy's is domiciled in Minnesota and conducts its business from within Minnesota, and the website about which EllisLabs complains is physically located in Minnesota. Lyne Declaration at ¶¶ 4, 6-7. Gippy's use of its trade name and hosting of its website are both activities conducted outside of Oregon.

EllisLabs also asserts that Gippy's "solicits business from web users within this district, and…sells products and services to residents of this district." Amended Complaint at ¶4. Again, something more than the mere presence on the world-wide web and acceptance of sales from persons who come to that website is needed to establish jurisdiction. In *Bancroft,* the Court found a basis for jurisdiction when a defendant individually targeted the plaintiff by sending a letter directly to the plaintiff, and thereby attempted to force the plaintiff to act. *Bancroft,* 223 F.3d at 1088. When a website advertiser does nothing other than register a domain name and post an essentially passive website and nothing else is done to encourage residents of the forum state, there is no personal jurisdiction. *Cybersell,* 130 F.3d at 418-20.

Even where a defendant registered another company's trademark as a domain name and posted a web site on the Internet under that name, jurisdiction did not lie. *Panavision International LP v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998). The *Panavision* court explained that "the objectionable webpage simply was not aimed intentionally at the [forum state] knowing that harm was likely to be caused there," and "[u]nder the effects doctrine, 'something more' was required to indicate that the defendant purposefully directed its activity in a substantial way to the forum state." *Id*. at 1022-1023; *see also*, *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002).

The Ninth Circuit has been clear at "something more" than just a foreseeable effect is required to conclude that personal jurisdiction is proper. *Bancroft,* 223 F.3d at

1087.  There needs to be action that can be construed as being expressly aimed at the forum state.  *Caddy*, 453 F.3d at 1156.

The *Mavrix* court considered whether the defendant's actions  - selling advertising space to third parties who targeted California residents, operating an interactive website with a particular focus on California-centered celebrity and entertainment industries, and desiring and achieving a substantial California viewer base as an integral component of its business model and profitability – would support the exercise of specific jurisdiction. The court explained that "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed. But where…a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state."  647 F.3d at 1231.  Nothing in EllisLab's Amended Complaint supports a conclusion that there is some particular appeal to Gippy's web hosting operations for businesses in Oregon, and Gippy's has in no way attempted to target some particular interest of Oregon businesses or some unique facet of Oregon business activity.  Lyne Declaration at ¶21.  Given that Gippy's total revenues from Oregon-based clients is a fraction of a percent of Gippy's overall revenues, a suggestion that Gippy's profits from Oregon clients in a manner distinct from clients in all other states is similarly not supportable.  Lyne Declaration at ¶20.

Specific jurisdiction over Gippy's cannot be found under the *Calder* effects test, as well.  Under *Calder*, a plaintiff must show that the defendant knew that the "brunt" of the alleged injury would be felt by the plaintiff in the forum and that the defendant

"intentionally targeted" the forum.  The discussion above shows that there was no intentional targeting of Oregon by Gippy's.

The remaining factual issue is whether Gippy's knew that the brunt of the alleged injury would be felt by EllisLab in Oregon.  That sort of knowledge was present where a defendant intentionally infringed the plaintiff's copyright in several photographs.  *Mavrix, id.* at 1231-1232.  The court determined that the defendant's intentional acts destroyed some of the value of those celebrity photographs in California by reducing the number of Californians who would buy magazines containing those photos.  *Id.* at 1232.

Here, EllisLab has alleged that Gippy's did not fully pay EllisLab amounts due under the parties' contract, and that Gippy's has improperly used as its business identification the trademark ENGINEHOSTING  In fact, Gippy's has at all times paid EllisLab exactly as the parties' contract called for, and is (and has been) the sole owner of all the intellectual property rights in the ENGINEHOSTING name.  Lyne Declaration at ¶¶13-14.   There is no basis to conclude that Gippy's took intentional acts which it knew would destroy any value that might be present in EllisLab's marks or knew would harm EllisLab in Oregon.  To the contrary, Gippy's has studiously avoided any actions which would harm EllisLab throughout the parties' relationship.

There is also no basis to conclude that the harms alleged by EllisLab arise out of or results from Gippy's forum-related activities.  As noted earlier, all of Gippy's activities – hosting websites, developing websites for clients, providing technical support for clients, and billing – are done outside the state of Oregon. Lyne Declaration at ¶¶4-8. Gippy's pays – or as alleged has failed to pay – EllisLabs from Minnesota.  Lyne

Declaration at ¶13.  To the extent the *www.enginehosting.com* website infringes any of EllisLab's intellectual property rights, it does so from the state of Minnesota.  Lyne Declaration at ¶7.  The only "forum-related" activities identified by EllisLab are the provision of webhosting services to Oregon residents, and all those websites are located in Minnesota, California, or Virginia.  Lyne Declaration at ¶8.  As a result, there are no harms which might have been caused to EllisLab from Gippy's activities in or related to Oregon.

        c.   <u>Exercise of jurisdiction over Gippy's by this Court would not be reasonable.</u>

If it is decided that a defendant purposefully established minimum contacts within a forum state, these contacts should be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *International Shoe,* 326 U.S. at 326. Courts thus have the power to evaluate "the burden on the defendant" and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies."  Minimum requirements inherent in the concept of "fair play and substantial justice" can defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.  *World-Wide Volkswagen,* 444 U.S. at 292.

Jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party becomes, unfairly, at a "severe disadvantage" in comparison to the party's opponent. *The Bremen v. Zapata Off-Shore Co.,* 407 U. S. 1, 18 (1972), *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 277, 105 S.Ct. 2174, 2185 (1985).

In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is therefore reasonable, courts in this Circuit consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Collegesource*, *id,* 653 F.3d at 1079, quoting *Dole Food*, 303 F.3d at 1114.

The first factor, that of "purposeful injection" into Oregon, has been discussed above, and the facts show that Gippy's has not purposely injected itself Oregon's affairs.

As to the second factor, Gippy's would suffer an unreasonable burden if it were to have to litigate in Oregon. Gippy's has no operations, employees, or facilities in Oregon; its 6 employees are located in Minnesota, California, Texas, or Missouri – none are in Oregon. Lyne Declaration at ¶6. All documents relevant to the harms alleged by EllisLabs are located in Minnesota, and all the personnel who would respond to discovery or be witnesses in this matter are resident in Minnesota . Lyne Declaration at ¶24. The additional expense of litigating in Oregon would be substantial financial burden on Gippy's, which is a small, privately held business with less than $1.3 million of total revenues in 2011. Lyne Declaration at ¶25.

Gippy's believes that the third factor - the extent of the conflict with the sovereignty of Minnesota – is not present here, and thus tilts to neither party.

The fourth factor – Oregon's interest in adjudicating this dispute – is ephemeral at best. While EllisLabs is an Oregon corporation, EllisLab has presented no basis to conclude that the state of Oregon is particularly interested in this commercial dispute.

The fifth factor - the most efficient judicial resolution of the controversy – is solidly in Gippy's favor. Gippy's has filed a declaratory judgment action in Minnesota to determine what contract between the parties governs their relationship, since EllisLab is attempting to assert contractual rights which arose (if at all) under an oral agreement that would fail a statute of frauds analysis in Minnesota and was completely superseded by a written agreement between the parties. Dismissal of this case (or, as discussed below, transfer of this case to Minnesota) would serve judicial economy by having a single court determine all the relevant factual and legal issues between the parties.

The sixth factor - the importance of using Oregon as the forum to EllisLab's interest in convenient and effective relief – is obviously in EllisLab's favor. Every plaintiff wants to sue on its home turf, and EllisLab is no different.

Finally, on the seventh factor - the availability of a "suitable alternative forum" - Gippy's has shown that Oregon would be unreasonable forum, and Minnesota would be a far more reasonable forum. *See*, *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 n. 19 (9th Cir.2011) (quoting Sinatra, 854 F.2d at 1201). *See also Corp. Inv. Bus. Brokers v. Melcher,* 824 F.2d 786, 791 (9th Cir.1987). That factor is also in Gippy's favor.

In sum, a proper consideration of all the factors would result in a finding that specific jurisdiction over Gippy's cannot be supported, and this matter should be dismissed.

3. <u>In The Alternative, Transfer Of This Matter To Minnesota Would Be Appropriate</u>.

The Court does need have to reach the question of personal jurisdiction over Gippy's, but instead can resolve the pending dispute over the proper place for the matter to be heard by transferring the matter to the District of Minnesota.  Under 28 USC § 1404, the court may transfer any civil action to any other district or division where it might have been brought "for the convenience of parties and witnesses."  28 U.S.C. §1404(a).

The inconvenience to a party that has minimum contacts with a plaintiff's requested forum is often more appropriately handled through changes in venue, and not by refusing to exercise jurisdiction.  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir.1986) citing to *Burger King*, 105 S.Ct. 2185 (1985).  If the Court determines that dismissal is not appropriate here, then transfer to the District of Minnesota is the proper alternative.

a. <u>The factors used by courts in reviewing requests for transfer favor transfer to Minnesota.</u>

Under § 1404(a), this court has the discretion to adjudicate Gippy's motion for transfer under an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted).  Where an underlying agreement between the parties was negotiated and executed in New York, the majority of the witnesses lived and worked in the New York area where they were subject to subpoena, all the defendants were subject to personal jurisdiction in New York, and the costs of litigation would be drastically

reduced if the case were heard in New York, transfer of the action was proper. *Lu v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Here, the initial oral agreement between the parties was entered into in California, and that factor provides no basis for keeping this matter in Oregon. Lyne Declaration at ¶9. [2]

Gippy's, its owners and employees, and its witnesses for this case are all located in Minnesota, as are all the relevant documents related to EllisLab's claims of underpayment. Lyne Declaration at ¶24. The convenience of having this matter heard where all those essential persons are located argues strongly in favor of transfer to Minnesota. The location of more of the relevant witnesses and other sources of proof in one of the two possible states for transfer supported placing the case in that state. *Jones*, 211 F.3d at 499. The location of relevant, original documents or evidence in the hands of the defendant was more convenient, and supported transfer to the defendant's District. *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010).

Gippy's, the sole defendant, is located in and subject to personal jurisdiction in Minnesota. Lyne Declaration at ¶4. Again, this factor supports transfer to Minnesota.

The costs to Gippys would be significantly less with the matter transferred to Minnesota. Lyne Declaration at ¶24. Again, this factor supports transfer to Minnesota.

---

[2] EllisLab alleges that the 2006 agreement was entered into in Oregon, but carefully ignores the controlling, 2007 written agreement between the parties, which was negotiated and entered into through a series of emails between the principals of the two companies (one in Minnesota and the other in locations presently unknown to Gippy's), thus also providing no basis for establishing or retaining venue in Oregon.

Finally, the location of the alleged harms argues for transfer to Minnesota. Trademark infringement claims "focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the **infringer's** place of business is often the critical and controlling consideration" in deciding a motion to transfer. *H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.*, 979 F.Supp. 627, 630 (N.D.Ill.1997) (emphasis added); *see also Brunswick Bowling & Billiards Corp. v. Pool Table Plus, Inc.*, No. 04 C 7624, 2005 WL 396304, *5 (N.D. Ill. Feb. 16, 2005) (finding that the plaintiff's choice of forum should be given less weight and that the site of material events weighed in favor of the requested transfer, and that such claims "focus on the activities of the alleged infringer, its employees, and its documents," all of which were located in the transferee forum).

      b.   The interest in avoiding-piecemeal-litigation factor also supports transfer to the District of Minnesota.

A district court also should consider whether transfer would avoid piecemeal litigation between the parties. In *Cosmetic Warriors Ltd.,* 723 F.Supp.2d 1102, 1109-1110, the court found that where a defendant had commenced a declaratory judgment action against the plaintiff in the Northern District of Texas, seeking a declaration that it was not liable for trademark infringement, it would be in <u>each party's</u> interest, and it would conserve judicial resources, to have all of these related claims resolved in one forum, citing to *May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1166 (E.D.Mo.1995)(granting motion to transfer to district where related declaratory-judgment action was pending, "Litigation of related claims in the same tribunal is strongly favored

because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results.").

Gippy's has commenced a declaratory judgment action against EllisLab in Minnesota, seeking a determination that it is solely the parties written agreement from March of 2007 which controls the relationship of the parties. Declaration of Christopher Sandberg, Exhibit A.  That issue, which EllisLab has deftly avoided mentioning in its Amended Complaint, must be resolved in order to determine whether or not EllisLabs has been properly paid.  It would serve the parties' interest and the interest of judicial enconomy to transfer this action to Minnesota, where it could be combined with Gippy's declaratory judgment action for a single, consistent determination, and thereby prevent piecemeal litigation between the parties in Minnesota and Oregon.

// // // //

## CONCLUSION

Gippy's respectfully requests that the Court grant its motion to dismiss for lack of personal jurisdiction, or, in the alternative, transfer this action to the District of Minnesota.

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains (6,232) words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED: May 2, 2012.

Respectfully submitted,

By: ____ /s/ Jeffrey A. Bowersox
Jeffrey A. Bowersox, OSB #81442
BOWERSOX LAW FIRM, P.C.
5285 Meadows Rd., Suite 320
Lake Oswego, OR 97035
PH:  (503) 452-5858
Fax: (503) 345-6893
Email: Jeffrey@bowersoxlaw.com

Christopher K. Sandberg, Reg. MN No. 95485
*Pro Hac Vice Admission to be submitted*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
PH: (612) 339-6600
Fax: (612) 339-0981
Email: cksandberg@locklaw.com
ATTORNEYS FOR DEFENDANT
GIPPY'S INTERNET SOLUTIONS, LLC