**Matthew A. Levin, OSB #003054**
MattLevin@MHGM.com
**Stacy R. Owen, OSB # 074826**
StacyOwen@MHGM.com
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ELLISLAB, INC.**, an Oregon corporation, | No.: 3:12-cv-00432-HU |
| Plaintiff, | |
| vs. | **Plaintiff's**<br>**MEMORANDUM IN OPPOSITION**<br>**to Defendant's Motion to Dismiss**<br>**Amended Complaint or in the Alternative**<br>**to Transfer** |
| **GIPPY'S INTERNET SOLUTIONS,**<br>**L.L.C.**, a Minnesota limited liability<br>company, | |
| Defendant. | **Oral Argument Requested** |

# TABLE OF CONTENTS

**Page**

SUMMARY ........................................................................................................ 1

FACTUAL BACKGROUND ............................................................................ 1

ARGUMENT ..................................................................................................... 3

I.     In this case, Gippy's has had sufficient contacts with Oregon to warrant both specific and general personal jurisdiction. .......................................... 3

II.    Plaintiff has established sufficient facts to defeat Gippy's motion to dismiss. ................. 4

III.   Because of Gippy's extensive contacts with Oregon, it is subject to general personal jurisdiction here. ................................................................. 4

     A.    Gippy's made sales, solicited and engaged in business in Oregon and otherwise served the state's markets. ........................................ 5

     B.    Gippy's markets into Oregon, even though – like many other Internet companies - it does not use traditional forms of advertising. ................. 6

     C.    Gippy's conducted business with Oregon residents via its interactive website and through traditional business contacts. .................................. 7

          1.    Gippy's conducted business with Oregon customers. ............... 7

          2.    Gippy's conducted business with Oregon's EllisLab. ................. 8

     D.    Gippy's Lyne traveled to Oregon to conduct business here with EllisLab, which supports subjecting Gippy's to general jurisdiction in Oregon ..................................................................................... 9

IV.   Gippy's is subject to specific personal jurisdiction in Oregon. ....................... 10

     A.    The standard for the exercise of specific jurisdiction. .......................... 10

     B.    "Purposeful availment" can be satisfied in two ways. .......................... 10

          1.    Through its Internet and other non-web related activity, Gippy's purposefully availed itself of the privilege of doing business in Oregon. ......................................................................... 11

               a.    *Millenium Enters., Inc. v. Millenium Music, LP.* ........................ 11

               b.    *Stomp, Inc. v. NeatO, LLC.* .............................................. 12

               c.    *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.* ............................. 12

               d.    Gippy's has maintained a steady stream of business with Oregon residents who are webhosting clients. ............................. 13

          2.    Through more traditional contacts, Gippy's also availed itself of Oregon's laws. ....................................................................... 14

        3.     This litigation is centered around Gippy's infringing activities. Because those activities were aimed at, and affect, EllisLab in Oregon, they create specific jurisdiction. .................................................. 15

    C.     EllisLab's claims arise out of Gippy's forum-related activities. .......................... 17

    D.     It is reasonable for this Court to exercise jurisdiction over Gippy's. .................. 18

    E.     If the Court is inclined to grant Gippy's motion, EllisLab requests limited discovery solely related to jurisdictional facts. ......................... 21

V.    This case should not be transferred to Minnesota. ............................................................. 21

    A.     Standard for consideration of Gippy's request to transfer. .................................... 21

    B.     The fact that Gippy's filed a case in Minnesota as a reaction to this one does not help establish a forum there. ............................................................... 22

    C.     Gippy's has not proven that the United States District Court of Minnesota is an adequate alternative forum because the facts do not support that court's exercise of jurisdiction over EllisLab. ................................. 23

    D.     If EllisLab's contacts with Minnesota are sufficient to establish jurisdiction there, then Gippy's stronger contacts with Oregon are sufficient to establish jurisdiction here. ............................................................... 23

CONCLUSION.............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*3M Co. v. Icuiti Corp.*,
No. 05-2945, 2006 WL 1579816 *1 (D. Minn. June 1, 2006) .................................. 17, 20

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ............................................... 4

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ............................................. 5

*Bauman v. DaimlerChrysler Corp.*,
644 F.3d 909 (9th Cir. 2011) ............................................. 19

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ............................................ 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ..................................................... 10

*Calder v. Jones*,
465 U.S. 873 (1984) ..................................................... 15

*Chan Soc'y Expeditions, Inc.*,
39 F.3d 1398 (9th Cir. 1994),
*cert. denied*, 514 U.S. 1004 (1995) ..................................... 3

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) .......................................... 21, 24

*Church of Scientology of Calif. v. United States Dep't of the Army*,
611 F.2d 738 (9th Cir. 1979) ........................................... 22

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......................................... 19

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ..................................................... 22

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) .......................................... 11, 12, 16

*Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......................................... 4

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ........................................... 21, 23

*Digital Equip. Corp. v. Altavista Tech., Inc.*,
960 F. Supp. 456 (D. Mass. 1997) ...................................... 18

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ...................................................................... 4, 21

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ......................................................................... 18

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
   103 F.3d 888 (9th Cir. 1996) ............................................................................ 3

*Gray v. Firstenberg Mack Co.*,
   913 F.2d 758 (9th Cir. 1990) ............................................................................ 3

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ......................................................................................... 21

*Helicopteros Nacionales do Colombia S.A. v. Hall*,
   466 U.S. 408 (1984) ................................................................................... 3, 4, 9

*Hirsch v. Blue Cross, Blue Shield of Kan. City*,
   800 F.2d 1474 (9th Cir. 1986) ....................................................................... 4, 5

*International Shoe Co. v. State of Wash.*,
   325 U.S. 310 (1945) ........................................................................................... 3

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .......................................................................... 21

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) .................................................................................... 17, 20

*Kulko v. Superior Ct. of Calif.*,
   436 U.S. 84 (1978) ............................................................................................. 5

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987) ................................................................... 10, 26

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987 ........................................................................... 21

*Mieczkowski v. Masco Corp.*,
   997 F. Supp. 2d 782 (E.D. Tex. 1998) ......................................................... 5, 6, 7

*Millenium Enters., Inc. v. Millenium Music, LP*,
   33 F. Supp. 2d 907 (D. Or. 1999) ................................................. 5, 9, 11, 12, 16

*Miskow v. Boeing*,
   664 F.2d 205 (9th Cir. 1981) .......................................................................... 24

*Nowak v. Tak How Invs., Ltd.*,
   94 F.3d 708, *reh'g denied* (1996) ............................................................. 17, 20

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ...................................................................... 20, 22

*Panavision Int'l, L.P. v. Toeppen*,
　　141 F.3d 1316 (9th Cir. 1998) ........................................ 15, 16

*Park Inns Int'l, Inc. v. Pacific Plaza Hotels, Inc.*,
　　5 F. Supp. 2d 762 (D. Az. 1998) ...................................... 15

*Peterson v. Highland Music, Inc.*,
　　140 F.3d 1313 (9th Cir. 1998) ........................................ 14, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
　　374 F.3d 797 (9th Cir. 2004) .......................................... 3, 10

*Sher v. Johnson*,
　　911 F.2d 1357 (9th Cir. 1990) ........................................ 4

*Sinatra v. National Enquirer, Inc.*,
　　854 F.2d 1191 (1988) ................................................. 14

Stomp, Inc. v. NeatO, LLC,
　　61 F. Supp. 2d 1074 (C.D. Calif. 1999) .............................. 12, 13

*Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*,
　　105 F. Supp. 2d 1142 (D. Or. 2000) .............................. 5, 12, 13, 18

*Tuazon v. R. J. Reynolds Tobacco Co.*,
　　433, F.3d 1163 (9th Cir. 2006) ....................................... 4

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
　　952 F. Supp. 1119 (W.D. Pa. 1997) ................................... 7, 11

**Rules**

Fed. R. Civ. P. 12(b)(2) ..................................................... 4

Or. R. Civ. P. 4 L .......................................................... 3

## SUMMARY

EllisLab, Inc. ("EllisLab"), an Oregon corporation, sued Gippy's Internet Solutions, L.L.C. ("Gippy's") for (1) breaching the parties' agreement that was the basis of their business relationship, and (2) illegally using EllisLab's marks to promote Gippy's business. Because of Gippy's substantial contacts with Oregon, this Court has both general and specific jurisdiction over Gippy's. Neither the facts underlying this case, nor the fact that Gippy's filed a competing complaint in Minnesota after being served with this one, support Gippy's request to move this case to the United States District Court of Minnesota. Gippy's motion to dismiss, and its alternate motion to transfer this matter to Minnesota should both be denied.

## FACTUAL BACKGROUND

EllisLab is an Oregon corporation with its principal place of business in Beaverton, Oregon. (Amended Complaint ("Am. Compl.") ¶ 1.) EllisLab creates software applications, products and services that enable people to maintain their own website content without the need for technical expertise. (Am. Compl. ¶¶ 1, 7.) EllisLab released the first iteration of its website publishing software, "pMachine" (publishing machine), in 2002. The software revolutionized website creation and was featured in major computer magazines and in a book about blogging published by McGraw/Hill. (Am. Compl. ¶ 7.) During the 10 years that EllisLab has been in business, EllisLab has become one of the most recognizable brands among web professionals, bloggers, and savvy internet users. Over a quarter of a million people participate in EllisLab's community discussion forums. EllisLab products are used to power the websites of some of the most recognizable brands (Ford, Canon, SpeedTV, Apple, Steinway Piano, Ovation Guitar), political organizations (gop.com, change.gov), educational institutions (miami.edu) in the world. (Declaration of Rick Ellis in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Ellis Decl.") ¶ 25.)

Gippy's is a Minnesota limited liability company. (Am. Compl. ¶ 2; Def's Mot. to Dismiss at 7.) Gippy's is a web hosting service. (Am. Compl. ¶ 15; Def's Mot. to Dismiss at 7.) A web hosting service allows individuals and organizations to make their website accessible via

the Internet, by storing the website on the host's server and connecting that website to the Internet.  (Ellis Decl. ¶ 3.)

In 2002 in California, the founder of EllisLab, Rick Ellis ("Ellis"), met with the founder of Gippy's, Nevin Lyne ("Lyne"), and the two entered into an oral agreement.  (Am. Compl. ¶ 16; Def.'s Mot. to Dismiss at 7; Ellis Decl. ¶ 3.)  Ellis and Lyne agreed that EllisLab would refer its customers to Gippy's for website hosting.  (Am. Compl. ¶ 16; Ellis Decl. ¶ 3.)  It was a logical fit – EllisLab's popular software was for the creation and maintenance of web sites, and Gippy's provided hosting services that allowed EllisLab's customers to publish their websites to the Internet.  (Am. Compl. ¶ 7; Ellis Decl. ¶ 3.)  Upon information and belief, Gippy's did not have a large customer base prior to its agreement with EllisLab; the majority of its customers were (and are) almost entirely referrals from EllisLab.  (Ellis Decl. ¶ 9.)

The parties agreed that Ellis would develop the website "portal" that EllisLab's customers could use to learn about and, if they wished, sign up for Gippy's website hosting services.  (Am. Compl. ¶¶ 16, 24; Ellis Decl. ¶ 3.)  Ellis created the pMachineHosting website in California and later launched it and revised it while living and working in Oregon.  (Am. Compl. ¶ 24; Ellis Decl. ¶ 3.)  Ellis assisted with the creation and development of the later iteration of that website, known as EngineHosting, while he was living and working in Oregon.  (*Id.*)  The name and "address" of the portal website was originally "pMachineHosting.com" (EllisLab's original software – and company name – was "pMachine").  (Am. Compl. ¶¶ 7, 16; Ellis Decl. ¶¶ 2, 6.)

The parties agreed that Gippy's would handle all day to day operations of that website.  (Ellis Decl. ¶ 3.)  Up through the filing of this litigation, Gippy's did so, pursuant to the parties' agreement.  (*Id.* ¶ 6.)[1]  Since the filing, Gippy's has presumably continued in that role.  (*Id.*)

---

[1] Because Gippy's controls the enginehosting.com website and also controlled the predecessor website of pmachinehosting.com, all of the conduct described in this memorandum is ascribed to Gippy's, rather than its assumed business name, EngineHosting.  (Ellis Decl. ¶ 6; Am. Compl. ¶ 2.)

In February 2012, EllisLab learned that Gippy's had been secretly underpaying EllisLab on EllisLab's share of the revenue generated by the Hosting Websites. (Am. Compl. ¶ 25.) EllisLab also learned that Gippy's had been underpaying EllisLab by shifting customers to certain custom hosting packages that Gippy's had unilaterally determined were outside of the parties' agreement. (Am. Compl. ¶ 27.) On April 23, 2012, EllisLab filed this lawsuit alleging claims of breach of contract and trademark infringement. (Am. Compl. ¶¶ 52-82.)

## ARGUMENT

I.    **In this case, Gippy's has had sufficient contacts with Oregon to warrant both specific and general personal jurisdiction.**

In deciding whether the court may exercise personal jurisdiction over an out-of-state defendant, the court considers two questions: (1) whether the forum state's long-arm statute authorizes jurisdiction; and (2) whether the exercise of personal jurisdiction violates federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996); *Chan Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). Oregon's long-arm statute sets a standard co-extensive with federal jurisdictional standards, Or. R. Civ. P. 4 L, as a result, a federal court sitting in the District of Oregon may exercise personal jurisdiction to the extent possible within the limits of federal constitutional due process. *Gray v. Firstenberg Mack Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

In order to be subject to personal jurisdiction in a federal court, federal due process jurisprudence requires that a nonresident defendant has at least "'minimum contacts'" with the court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *International Shoe Co. v. State of Wash.*, 325 U.S. 310, 316 (1945)). Minimum contacts can be shown either through facts supporting general jurisdiction or specific jurisdiction over a defendant. *Helicopteros Nacionales do Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984).

**II.    Plaintiff has established sufficient facts to defeat Gippy's motion to dismiss.**

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2).  Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court decides the motion by relying upon the parties' pleadings and affidavits without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss."  *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).  The court accepts uncontested allegations within a plaintiff's complaint as true and conflicts between statements in the parties' affidavits are resolved in the plaintiff's favor. *Boschetto*, 539 F.3d at 1015 (internal citations omitted).

**III.    Because of Gippy's extensive contacts with Oregon, it is subject to general personal jurisdiction here.**

General jurisdiction allows a court to hear any cause of action involving the defendant, whether or not the cause of action sprang from the defendant's conduct in the forum state. *Helicopteros*, 466 U.S. at 415.  In order for a court to exercise general jurisdiction over a defendant, the defendant's contacts with the forum state must be "continuous and systematic." *Id.* at 416.

In determining whether a defendant is subject to general jurisdiction, the Court should examine "all of the defendant's activities that impact the state."  *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1478 (9th Cir. 1986).  The examination is not mechanical and does not involve a precise checklist, but requires the analysis of the facts on a case by case basis. *Tuazon v. R. J. Reynolds Tobacco Co.*, 433, F.3d 1163, 1172 (9th Cir. 2006) (citing *Kulko*

*v. Superior Ct. of Calif.*, 436 U.S. 84, 92 (1978)).  Here, relevant considerations include the

following:

> (1) Whether the defendant made sales, solicited or engaged in
> business in the state or otherwise served the state's markets;
>
> (2) Whether the defendant targeted any print, radio or television
> advertising to the forum state;
>
> (3) Whether the defendant conducted business with forum
> residents via its website; and
>
> (4) Whether any employees or officers of the defendant traveled to
> the state.

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Hirsch*,

800 F.2d at 1478; *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F. Supp. 2d 1142, 1147

(D. Or. 2000) ; *Millenium Enters., Inc. v. Millenium Music, LP*, 33 F. Supp. 2d 907, 910 (D. Or.

1999) ; *Mieczkowski v. Masco Corp.*, 997 F. Supp. 2d 782, 787 (E.D. Tex. 1998).

### A.    Gippy's made sales, solicited and engaged in business in Oregon and otherwise served the state's markets.

By Gippy's own admission, Gippy's has made sales, solicited and engaged in business in

Oregon over the last ten years.  (Declaration of Nevin Lyne ("Lyne Decl.") ¶¶ 15, 17.)  Gippy's

estimates that over the last ten years, approximately 90 to 110 of their clients have come from

Oregon.  (*Id.* ¶ 15.)  Gippy's estimates that during Gippy's ten years of service to Oregon

residents, Oregon clients have "represented about 1.5% of Gippy's hosting clients."  (*Id.* ¶ 17.)

Gippy's estimates, however, are too low.  Based upon receipts EllisLab received from Gippy's

between November 18, 2004 and March 5, 2012, Gippy's has served at least 126[2] Oregon

customers, which would make Oregon, mathematically-speaking, about 2% of Gippy's

customers.  (Ellis Decl. ¶¶ 8, 9.)

---

[2] This number is likely higher because EllisLab does not have complete records, and does not have anything from before November 18, 2004.  (Ellis Decl. ¶¶ 8, 9.)

The continuous and systematic nature of Gippy's contacts with Oregon are further supported by additional statistics.  According to EllisLab's records, Gippy's serves customers from at least 29 states and at least three foreign countries.  (Ellis Decl. ¶ 9.)  According to the United States Census Bureau estimate for 2011, Oregon's population figure represents only 1.25% of the total U.S. population.  (http://quickfacts.census.gov/qfd/states/41000.html; Owen Decl. ¶ 13, Ex. 8.)  Given Gippy's national and international reach, the fact that about 2% of its customers are from Oregon means that Oregon is over-represented in comparison to its size.

And Gippy's statistics are misleading for another reason – they ignore the fact that the vast majority of Gippy's customers are derived directly because of Gippy's relationship to Oregon.  It is the work of Oregon-based EllisLab that generates customers for Gippy's.  (Ellis Decl. ¶ 9.)  When customers use EllisLab's software, EllisLab directs them to Gippy's.  (Am. Compl. ¶ 16.)

**B.     Gippy's markets into Oregon, even though – like many other Internet companies - it does not use traditional forms of advertising.**

Like most Internet companies, Gippy's markets itself in Oregon in ways other than print, radio and television ads (Lyne Decl. ¶ 23), yet still has a long and significant presence in Oregon.

Although early cases on the relationship between advertising and personal jurisdiction focused on the traditional print, radio and television advertisements, the modern reality is that Internet companies have eschewed these traditional forms of advertising to market their wares.  For example, the Internet company "Instagram," with 30 million users, was purchased by Facebook for about $1 billion, even though Instagram never had a radio, TV or print ad campaign.  (Owen Decl. ¶ 14, Ex. 9, http://dealbook.nytimes.com/2012/04/09/facebook-buys-instagram-for-1-billion .)  Courts have begun to recognize this reality.  *Mieczkowski*, 997 F. Supp. at 788 (noting that defendant's web site "is designed to solicit business in a manner that exceeds traditional notions of advertising.").

EllisLab has not used traditional forms of advertising in Oregon or in any other state.  (Ellis Decl. ¶ 10.) The majority of EllisLab's "advertising" comes in the form of "viral

**Page 6 -    PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

advertising," i.e., word of mouth advertising via online communities. (*Id.* ¶ 12.) Given the nature of EllisLab's business, traditional forms of advertising are not considered as effective as word of mouth advertising by members of the online community. (*Id.* ¶¶ 12, 13.) Upon information and belief, Gippy's has not conducted any print, radio or television advertising in Minnesota or in any other state. (*Id.* ¶ 11.) And as described above, Gippy's largest source of customers has been referrals from its Oregon benefactor – EllisLab. (*Id.* ¶ 9.)

**C.    Gippy's conducted business with Oregon residents via its interactive website and through traditional business contacts.**

**1.    Gippy's conducted business with Oregon customers.**

By Gippy's own description, Gippy's operates an interactive website that reaches Oregon residents and that satisfies one component to subject it to personal jurisdiction here. (Def.'s Mot. to Dismiss at 10 ("Gippy's website is interactive – it permits user [sic] to sign up for hosting services from Gippy's . . .").) Through Gippy's interactive website, a visitor can become a customer of Gippy's in just a few "clicks," and without ever leaving his or her chair in Oregon.

The courts consider a website "interactive" when a defendant conducts business over its website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). By contrast, a website is at the other end of the spectrum and is considered "passive" if it does little more than to make information available to visitors. *Id.* EllisLab agrees with Gippy's description of its website as "interactive." For example, through the EngineHosting website, a visitor can (1) obtain detailed information about webhosting services, including costs, (2) sign up for services by providing billing and contact information, (3) agree to terms of service, (4) access customer support, which is available all day, every day, and (5) track their customer support requests. (Owen Decl. ¶¶ 2-12 & Exs. 1-7.)

In addition to operating an interactive website, Gippy's has also maintained sufficient "traditional business contacts" to justify this Court's exercise of general jurisdiction. *Mieczkowski*, 997 F. Supp. at 788. In *Mieczkowski v. Masco Corp.*, the court determined that it could exercise general jurisdiction over an out of state defendant based upon the combination of

the defendant's interactive website and its traditional business contacts with the forum state. *Mieczkowski*, 997 F. Supp. 2d at 787-88.  In reaching its decision, the court recognized that technological advances were having a profound effect on how companies do business, "[e]ssentially, the Internet allows businesses to conduct their trade with the stroke of a few keys from their desktop computers without ever leaving the office or picking up the phone." *Id.* at 786.  The interactive nature of the website, combined with the history of sales to residents, direct mailings to customers and the purchase of products from the forum state of the forum state, led that court to conclude that the defendant maintained systematic contact with the state to warrant the exercise of general jurisdiction.  *Id.* at 787-88.

Here, after learning of Gippy's through their interaction with Oregon's EllisLab, customers sign up for service through Gippy's interactive website. Gippy's then maintains its connection with its customers through various contacts outside of its website.  After paying online, customers receive an electronic email receipt acknowledging sign up and indicating that the customer can expect a follow up contact from the company to provide the customer with account information.  (Declaration of Derek Jones in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Jones Decl.") ¶ 3 & Ex. 1.)  Gippy's further maintains relationships with customers through other email communications.  For example, the contractual relationships that Gippy's enters with customers at sign up will renew automatically and customers receive renewal notices via email.  (*Id.* ¶ 4, Exs. 2, 3.)  In addition, Gippy's regularly reaches out to its hosting clients to provide service updates and special offers through email messages.  (*Id.* ¶ 5 & Ex. 4.)  In addition, Gippy's solicits personal testimonials through email to clients.  (*Id.* ¶ 6 & Ex. 5.)

### 2.    Gippy's conducted business with Oregon's EllisLab.

In addition to Gippy's continuous and systematic contacts to *customers* in Oregon obtained through its contractual relationship with EllisLab, as described above, Gippy's made other contacts with *EllisLab* in Oregon that also support the exercise of general jurisdiction.

After the parties' relationship began in 2002, these companies primarily conducted business with each other via technology – telephone, email, text message, for example.  Face-to-face meetings were rare, but did occur.  (Ellis Decl. ¶¶ 3, 4.)  Through an email exchange of March 15, 2007, for example, the parties agreed to a change in Gippy's commissions.  (*Id.* ¶ 7; Def.'s Mot. to Dismiss at 7.)  Ellis was living and working in Bend, Oregon when the parties reached this agreement.  (Ellis Decl. ¶ 7.)

As the result of the parties' contractual relationship, approximately every month during the parties' ten-year contractual relationship, Gippy's has engaged in another contact with Oregon through, at least, sending commission payments to Oregon, either to Ellis or directly wired to EllisLab's Oregon bank account.  (*Id.* ¶¶ 14, 15.)

### D.   Gippy's Lyne traveled to Oregon to conduct business here with EllisLab, which supports subjecting Gippy's to general jurisdiction in Oregon.

In August of 2006, one of the parties' rare face to face meetings occurred.  (Ellis Decl. ¶¶ 4, 5.)  At Lyne's suggestion, Lyne traveled to Bend, Oregon to meet with Ellis at Ellis's home.  (*Id.* ¶ 5, Ex. 1.)  The two met to discuss Ellis's plans to change the EllisLab brand.  (*Id.* ¶ 5.)  Because EllisLab was replacing its "pMachine" software with a new version called "ExpressionEngine," Ellis wanted to begin a rebranding campaign around the name change.  (Am. Compl. ¶ 19; Ellis Decl. ¶¶ 5, 6.)  At that meeting in Bend, the parties orally agreed to do the rebranding campaign, which among other things, resulted in changing the portal website from "pMachineHosting.com" to "enginehosting.com."[3]  (Am. Compl. ¶ 19; Ellis Decl. ¶¶ 5, 6.).  By contrast, neither Ellis, nor any EllisLab employee, has felt compelled to travel to Minnesota to meet with anyone from Gippy's.  (Ellis Decl. ¶ 23.)  Among the facts considered in analyzing general jurisdiction is whether a defendant has traveled to the forum state.  *Helicopteros*, 466 U.S. at 416; *Millenium Enters.,* 33 F. Supp. 2d at 910.  Considered as a whole, the facts support this Court's exercise of general jurisdiction over Gippy's.

---

[3] Incidentally, the parties' later March 15, 2007 agreement did not revisit the branding issues resolved in the parties' 2006 oral agreement.  (Ellis Decl. ¶ 7, Ex. 2.)

**Page 9 -   PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

**IV.    Gippy's is subject to specific personal jurisdiction in Oregon.**

In addition to being subject to general jurisdiction, this Court may exercise specific jurisdiction over Gippy's.

**A.    The standard for the exercise of specific jurisdiction.**

The courts of the Ninth Circuit apply a three-pronged test for determining whether the exercise of specific personal jurisdiction over a nonresident defendant may be appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff has the burden to prove the first two prongs. Once the first two elements are met, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

**B.    "Purposeful availment" can be satisfied in two ways.**

To satisfy the first prong of purposeful availment, plaintiffs must either show that a defendant "purposefully availed itself of the privilege of conducting activities" in the forum state or that the defendant purposefully directed its activities to that state. *Schwarzenegger*, 374 F.3d at 802. The "purposeful availment" analysis is typically used in cases sounding in contract. *Id*. The "purposeful direction" consideration is most often used in cases sounding in tort. *Id*. In this matter, because EllisLab brings both contract and tort claims, both analyses will be considered.

1.      **Through its Internet and other non-web related activity, Gippy's purposefully availed itself of the privilege of doing business in Oregon.**

There are three important decisions in the Ninth Circuit regarding Internet commercial activity that illustrate why this Court has specific jurisdiction over Gippy's here.

a.      ***Millenium Enters., Inc. v. Millenium Music, LP.***

In *Millenium Enterprises*, Portland, Oregon music retailer Music Millenium filed suit in Oregon against Millenium Music, Inc., a South Carolina corporation, alleging state and federal claims, including trademark infringement and dilution, unlawful trade practices and unfair competition. *Millenium Enters.,* 33 F. Supp. 2d at 908. In support of personal jurisdiction, Music Millenium pointed to Millenium Music's sale of one compact disc in Oregon and its purchases from an Oregon supplier. *Id.* at 911. The Court considered the business conducted on Millenium Music's website, quoting the guidance from *Zippo Manufacturing* that courts must consider the "'level of interactivity and commercial nature of the exchange of information' to determine whether jurisdiction should be exercised." *Millenium Enters.*, 33 F. Supp. 2d at 916 (quoting *Zippo Mfg.*, 952 F. Supp. at 1124)). The court disregarded the one website sale because it was orchestrated by plaintiff's counsel. *Millenium Enters.*, 33 F. Supp. 2d at 911.

In looking at cases from the Ninth Circuit, *Millenium Enterprises* considered *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), which involved an essentially passive website over which no transactions had been consummated. *Id.* at 919-20. By comparison, the *Millenium Enterprises* court determined that Millenium Music maintained an interactive website (allowing visitors to purchase compact discs, join a discount club and receive franchising information), *id.* at 920, but that personal jurisdiction was not appropriate for lack of business with forum residents. *Id.* at 923. The Court stated that "[u]ntil transactions with Oregon residents are consummated through defendants' website, defendants cannot reasonably anticipate that they will be brought before this court . . . ." *Id.*

b.      *Stomp, Inc. v. NeatO, LLC.*

Following *Millenium Enterprises*, the United States District Court for the Central District

of California considered the case of *Stomp, Inc. v. NeatO, LLC*, in which Stomp initiated a

declaratory judgment action regarding a patent and to bar NeatO from suing for infringement.

*Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1075 (C.D. Calif. 1999) .  After NeatO moved

to dismiss for lack of personal jurisdiction, the court considered whether NeatO had sufficient

contacts with California through its website.  *Id.* at 1077.  In comparison to the passive website

in *Cybersell* through which no sales had been transacted, the court found that NeatO had

conducted sales over its website to California residents.  *Stomp, Inc.* at 1076, n.2.  In fact, the

court explained that a large portion of NeatO's website was dedicated to online purchasing.  *Id*.

at 1078.  The court called NeatO's website a "virtual store," which allowed visitors to view

product descriptions and prices and purchase by providing credit card and shipping information.

*Id*. at 1078, n.7.  In addressing the fact that Stomp could only cite two sales to California

residents, the court determined that the quality, not quantity, of the contacts was key.  *Id*. at

1076, n.2, 1078.  The court concluded that "[b]y engaging in Internet commerce with California

citizens, NeatO has established the minimum contacts that are a prerequisite to the exercise of

[personal] jurisdiction over it."  *Id*. at 1078.

c.      *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc*.

Subsequent to *Stomp*, the United States District Court of Oregon considered the case of

*Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, in which Tech Heads, an Oregon corporation, sued

Desktop Service Center, a Virginia corporation, alleging claims of trademark infringement,

dilution and unfair competition.  *Tech Heads*, 105 F. Supp. 2d at 1143-44.  Distinguishing the

case from *Cybersell*, the court in *Tech Heads* noted that the website at issue was interactive, not

passive, and unlike *Cybersell*, *Tech Heads* involved non-web contacts, as well.  *Tech Heads*, 105

F. Supp. 2d at 1148.  Contrasting *Tech Heads* to *Millenium Enterprises*, the court noted that Tech

Heads had a highly interactive website and had consummated a transaction with an Oregon

resident.  In addition, the court noted certain other actions, such as national advertising and

providing a toll-free number. *Tech Heads*, 105 F. Supp. 2d at 1050-51. For these reasons, the court determined that Tech Heads was subject to Oregon's jurisdiction.

> **d.     Gippy's has maintained a steady stream of business with Oregon residents who are webhosting clients.**

As described by Gippy's, the EngineHosting.com website controlled by Gippy's is an interactive website through which Oregon customers have signed up for services for ten years. (Def.'s Mot. to Dismiss at 10.) Once customers sign up, Gippy's reaches out to its new clients via email in order to provide account information. (Jones Decl. ¶ 3 & Ex. 1.) Once customers sign up, the service automatically renews. (*Id.* ¶ 4 & Exs. 2, 3.) As was important in *Tech Heads*, Gippy's engages in contacts outside of the EngineHosting website. Gippy's maintains its customer relationships through direct email communication to its customers, which include renewal notices, service updates, special offers and testimonial solicitations. (*Id.* ¶¶ 4, 5, 6 & Exs. 3, 4, 5.) *Tech Heads*, 105 F. Supp. 2d at 1150-51.

The *Stomp, Inc.* and *Tech Heads* courts determined that personal jurisdiction could be exercised despite the very low numbers of forum state contacts. *Stomp, Inc.*, 61 F. Supp. 2d at 1076 n.2 (two sales); *Tech Heads*, 105 F. Supp. 2d at 1149 (one contact). By contrast, Gippy's has been servicing Oregon customers for ten years, and has secured at least 126 Oregon customers through contract with EllisLab. (Lyne Decl. ¶ 15; Ellis Decl. ¶ 9.) In comparison to *Stomp, Inc.* and *Tech Heads*, Gippy's has secured a steady stream of business in Oregon, which presumably continues. Oregon is disproportionately represented as part of Gippy's national and international customer base – although it makes up 2% of Gippy's customers, it has only 1.25% of the total United States population. (Owen Decl. ¶13 & Ex.8) Further still, what is even more important is the quality of the contacts, rather than the quantity. *Stomp, Inc.,* 61 F. Supp. 2d at 1078. Given the highly interactive nature of Gippy's website and Gippy's broadcast email message follow up with customers, Gippy's has made significant contacts with Oregon residents.

**Page 13 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

2.    **Through more traditional contacts, Gippy's also availed itself of Oregon's laws.**

In addition to maintaining business relationships with web hosting clients in Oregon, Gippy's also engaged in contract negotiations and entered into a contractual relationship with EllisLab in Oregon.  (Ellis Decl. ¶ 5.)  "Contract negotiations are classic examples of the sort of contact that can give rise to in personam jurisdiction."  *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1320 (9th Cir. 1998) (considering factors such as the extensiveness of negotiations, where negotiations took place and whether the defendant traveled to the forum state).  "[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (1988) (explaining that purposeful availment requires the defendant to perform some type of affirmative conduct to allow or promote business within the forum state).

Gippy's and EllisLab's business relationship began with an oral agreement entered in 2002 in California.  (Ellis Decl. ¶ 3.)  These companies primarily conducted business with each other via technology – telephone, email, text message, for example.  Face to face meetings were rare.  (*Id.* ¶ 4.)

As described in more detail above, in August of 2006, one of the parties' rare face to face meetings occurred.  (Ellis Decl. ¶¶ 4, 5.)  At Lyne's suggestion, Lyne traveled to Bend, Oregon to meet with Ellis at Ellis's home and to make critical decisions and agree how the company's collaboration would work as "pMachine" evolved into "ExpressionEngine."  (*Id.* ¶ 5, Ex. 1.) The use and ownership of the brand EngineHosting is one of the issues at dispute in this lawsuit. (Am. Compl. ¶ 50.)

Through an email exchange of March 15, 2007, the parties agreed to a change in Gippy's commissions.  (Ellis Decl. ¶ 7; Def.'s Mot. to Dismiss at 7.)  Ellis was living and working in Bend, Oregon when the parties reached this agreement.  (Ellis Decl. ¶ 7.)  The parties' March 15, 2007 agreement did not address the branding issues addressed by the 2006 oral agreement.  (*Id.*)  This commission structure is also at the heart of the present dispute.

As discussed in *Peterson*, the facts that the 2006 agreement was negotiated and entered in Oregon and that Lyne traveled to Oregon are significant. *Peterson*, 140 F.3d at 1320. In support of its argument to dismiss this lawsuit or transfer it to Minnesota, Gippy's tries to remove its connection with Oregon by claiming that the parties intended that the March 15, 2007 email exchange would completely supersede the prior oral agreements. (Def.'s Mot. to Dismiss at 21; Exhibit A to Declaration of Christopher Sandberg ("Sandberg Decl.").) However, the facts do not support Gippy's allegation. Ellis did not agree that that exchange would replace and supersede the prior agreements between the parties. (Ellis Decl. ¶ 7.) The March 15, 2007 does not in any way state that the parties intended to supersede their prior oral agreements. (*Id.*, Ex. 2.) As a result, this agreement involving the dispute over the EngineHosting brand remains in place and the facts surrounding its creation support this Court's exercise of personal jurisdiction over Gippy's. And whether the 2006 face-to-face agreement or whether the 2007 e-mail agreement controls, both agreements are critical to this litigation, and both militate toward plaintiff's choice of forum in Oregon.

In addition, during the parties' ten-year contractual relationship, Gippy's sent, on an approximately monthly basis, payments to EllisLab in Oregon, either to Ellis or directly wired to EllisLab's Oregon bank account. (Ellis Decl. ¶¶ 14, 15.) *Park Inns Int'l, Inc. v. Pacific Plaza Hotels, Inc.*, 5 F. Supp. 2d 762, 765 (D. Az. 1998) (determining that conduct showing purposeful availment included the defendant mailing commission checks to travel agents in the forum state).

### 3. This litigation is centered around Gippy's infringing activities. Because those activities were aimed at, and affect, EllisLab in Oregon, they create specific jurisdiction.

In addition to the traditional "minimum contacts" test, purposeful availment may be shown through the "effects" test of *Calder v. Jones*, 465 U.S. 873 (1984), later affirmed by *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998), which states that jurisdiction may asserted when a defendant's actions are aimed at or affect the forum state. *Panavision Int'l*, 141 F.3d at 1322. Three factors are considered:

Page 15 - **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

(1) Intentional actions

(2) Expressly aimed at the forum state

(3) Causing harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state.

*Id*. at 1321.

In *Panavision*, Toeppen used Panavision's trademarks in an attempt to extort money from Panavision. *Panavision*, 141 F.3d at 1319. The court cited *Cybersell* for the concept that "something more" is required beyond simply illegally using another's trademark. *Panavision*, 141 F.3d at 1322 (citing *Cybersell*, 130 F.3d at 418 ("something more" is necessary to show that conduct was directed at the forum state). In *Panavision*, the "something more" was comprised of Toeppen's demand letter to Panavision in California. *Id.* at 1319. The court determined that Toeppen knew that his actions would have the effect of injuring Panavision in California, its principal place of business. *Id.* at 1322. The *Panavision* court determined that purposeful availment had been satisfied. *Id.*

EllisLab alleges that Gippy's' "unlicensed use of [the EllisLab marks] "EngineInternet," "EngineHosting," and "ExpressionEngine" is likely to cause confusion among consumers in the United States, including in this district." (Am. Compl. ¶ 36.) Likelihood of confusion is the gravamen of an infringement claim. *Millenium Enters.*, 33 F. Supp. 2d at 911 (internal citation omitted).

*Millenium Enterprises* states that a likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Id.* at 912 (internal citation omitted.) That is what EllisLab contends:

> Users will falsely assume that Gippy's is authorized to use EllisLab'ss [sic] marks, or is affiliated with and may offer EllisLab's products. Furthermore, Gippy's offers a competitive line of services and products (including add-on applications) for sale. Consumers will falsely assume that Gippy's products have the same qualities and attributes as EllisLab's software and other

**Page 16 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

products sold under the EllisLab's marks and/or are sponsored or
licensed by, or affiliated with, EllisLab.

(Am. Compl. ¶ 50.)

Here, the "something more" requirement beyond EllisLab's claim that Gippy's illegally
exceeded its license to use EllisLab's trademark names is satisfied in several ways. Gippy's has
directed activities at Oregon through maintaining ongoing relationships with Oregon hosting
customers, some of whom are likely to have suffered the confusion EllisLab contends (Jones
Decl., Ex. 6), In addition, Gippy's founder traveled to Bend, Oregon to negotiate and enter into
a contract with EllisLab. In addition, during the parties' ten-year relationship, Gippy's mailed,
on a monthly basis, commission checks to EllisLab for deposit into its Oregon-based bank.

Oregon is the home state of EllisLab and clearly has an interest in protecting those
businesses that elect to register in this state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776
(1984) (noting that New Hampshire had a "significant interest in redressing injuries that actually
occur within the State"); *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718, *reh'g denied* (1996);
*3M Co. v. Icuiti Corp.*, No. 05-2945, 2006 WL 1579816 *1, *3 (D. Minn. June 1, 2006)
("Minnesota has a strong interest in assuring its citizens have a forum to remedy trademark
infringement."). Further, one of the trade names at issue here, EngineHosting, is associated with
the website, to some extent, created and developed by Ellis while he was living and working in
Oregon. (Ellis Decl. ¶ 3.)

### C. EllisLab's claims arise out of Gippy's forum-related activities.

Gippy's knows that EllisLab is located in Oregon. Gippy's conduct of illegally using
EllisLab's marks will likely cause confusion for consumers with access to the gippy.net website
and the EngineHosting.com website, in Oregon and elsewhere. The evidence shows that
customer confusion has occurred, as described in the Jones Declaration and illustrated by the
attached example. (Jones Decl. ¶ 7 (discussing customer confusion regarding the ownership of
EngineHosting and whether EngineHosting services emanate from EllisLab or Gippy's) &

Ex. 6.)  Additional discovery on this issue is expected to reveal further examples of customer confusion.

In addition to customer confusion, Gippy's conduct is having an especially harmful effect on EllisLab, a business registered and with its principal place of business in Oregon.  *Tech Heads*, 105 F. Supp. 2d at 1151 (noting that Tech Heads' claims arise from Desktop's unauthorized use of marks and Tech Heads has shown evidence of customer confusion); *Digital Equip. Corp. v. Altavista Tech., Inc.*, 960 F. Supp. 456, 470 (D. Mass. 1997) (noting that because the alleged infringer knew that plaintiff was located in the forum, purposeful availment had been satisfied and infringing activity was causing customer confusion and harm to the forum business whose marks were being challenged).

### D.    It is reasonable for this Court to exercise jurisdiction over Gippy's.

Because EllisLab has shown that Gippy's has made sufficient contact with Oregon to justify the exercise of personal jurisdiction, the burden shifts to Gippy's to make a compelling argument that jurisdiction would not be reasonable.  The following seven factors are considered:

(1) The extent of the defendants' purposeful injection into the forum state's affairs;

(2) The burden on the defendant of defending in the forum;

(3) The extent of conflict with the sovereignty of the defendant's state;

(4) The forum state's interest in adjudicating the dispute;

(5) The most efficient judicial resolution of the controversy;

(6) The importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) The existence of an alternative forum.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

**Page 18 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

Gippy's fails to meet its burden of presenting a compelling argument that jurisdiction in this Court would not be reasonable. As to the first factor, EllisLab has described above the myriad ways that Gippy's has injected itself into Oregon affairs, including, for example, maintaining longstanding contractual relationships with EllisLab and with Oregon residents who are webhosting customers, traveling to Oregon to negotiate and enter into a contract with EllisLab, for ten years, making monthly commission check payments to EllisLab in Oregon.

As to the second factor, especially given that Gippy's business is virtual, available to anyone, worldwide, with access to the Internet, it does not seem realistic to argue that Gippy's would suffer an unreasonable burden. "'[W]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a form other than one's residence] is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (discussing defendant's participation in appellate oral argument via the use of videoconferencing) (internal citations omitted). "[G]iven the modern advances in communication and transportation," this factor no longer weighs heavily in the analysis. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 928 (9th Cir. 2011). As discussed in *CollegeSource* and *Bauman*, videoconferencing makes the location of witnesses irrelevant. As to the location of evidence, because nearly all document discovery is electronically gathered and shared, there are no "location" issues to address. And, by Gippy's own admission, it conducts business in several states which stretch across the United States – Minnesota, Missouri, Texas, and Oregon's neighbor, Washington. (Lyne Decl. ¶ 6.) By Gippy's own making, the company's reach is wide. And, as noted above, videoconferencing significantly reduces the financial burden of involvement in a lawsuit.

EllisLab agrees with Gippy's that the third factor does not tilt toward either party. (Def.'s Mot. to Dismiss at 20-21.)

As to the fourth factor, this was discussed earlier within the purposeful availment analysis. Given EllisLab's registration in Oregon and that fact that it maintains its principal place of business here, this state has an obvious interest in protecting its business community

**Page 19 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

from trademark infringement. *Keeton*, 465 U.S. at 776; *Nowak*, 94 F.3d at 718; *3M Co.*, 2006 WL 1579816, Case No. 05-2945, at *3.

As to the fifth factor, the most efficient resolution of this controversy is to maintain this suit in Oregon. As described above, EllisLab filed this lawsuit, making its substantive allegations on April 23, 2012. Seemingly only in an effort to challenge EllisLab's choice of forum, Gippy's filed its lawsuit in Minnesota, involving the same parties and addressing the same issues. As discussed in *Pacesetter Systems*, Gippy's effort to wrest jurisdiction from this Court should be denied. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982).

As to the sixth factor, EllisLab agrees with Gippy's assessment that this factor cuts solidly in EllisLab's favor. (Def.'s Mot. to Dismiss at 21.)

As to the seventh factor, Gippy's has not shown that Minnesota would be a suitable alternative forum. In fact, Gippy's fails to make any argument that the Minnesota court could exercise jurisdiction over EllisLab. The facts cut against the exercise of personal jurisdiction over EllisLab in Minnesota. EllisLab is not registered to do business in Minnesota. (Ellis Decl. ¶ 20.) EllisLab does not have a registered agent in Minnesota. (*Id.* ¶ 21.) EllisLab has no physical presence in Minnesota. (*Id.* ¶¶ 17, 24.) Ellis Lab does not lease or own real property in Minnesota or any other location. (*Id.* ¶ 24.) None of EllisLab's employees are located in Minnesota and never have been. (*Id.* ¶ 17.) Ellis lived in Oregon from November 2002 to 2010 and three key employees of EllisLab currently live in Oregon. (*Id.* ¶¶ 16, 18.) Neither Ellis, nor any of EllisLab's employees have traveled to Minnesota to conduct any business with anyone from Gippy's. (*Id.* ¶¶ 22, 23.) Applying the same factor presented by Gippy's (while recognizing that this factor appears out of date), EllisLab has never targeted any print, radio or television ads to Minnesota. (*Id.* ¶ 10.)

Consideration of all of the factors shows that Gippy's failed to meet its burden to show that the exercise of personal jurisdiction over Gippy's in Oregon would not be reasonable. For the all of the foregoing reasons, Gippy's motion to dismiss must be denied.

**Page 20 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

**E.     If the Court is inclined to grant Gippy's motion, EllisLab requests limited discovery solely related to jurisdictional facts.**

EllisLab expects that Gippy's allegations within its motion to dismiss would not be borne out by limited discovery regarding jurisdictional facts, including but not limited to, the precise number of Oregon customers over the last ten years, the number and nature of contacts made by Gippy's to its Oregon customers, and the percentage of revenue generated by Gippy's from those Oregon customers.  If the Court is inclined to grant Gippy's motion to dismiss, EllisLab respectfully asks for a limited period of discovery.  *Doe*, 248 F.3d at 922 (stating that a court may order discovery on jurisdictional issues).

**V.     This case should not be transferred to Minnesota.**

**A.     Standard for consideration of Gippy's request to transfer.**

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Whether to transfer venue is a decision that lies in the discretion of the district court.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (under section 1404(a), "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (internal quotation omitted).  Courts in the Ninth Circuit generally accord "great weight" to plaintiff's choice of forum.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  As a result, that choice should be honored "'unless the balance is strongly in favor of the defendant.'"  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The defendant bears the burden to prove that an adequate alternative forum exists.  *Cheng*, 708 F.2d at 1411.  Thus, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**B.      The fact that Gippy's filed a case in Minnesota as a reaction to this one does not help establish a forum there.**

"As between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  To avoid having two or more courts address the same issues, federal courts have adopted a "generally recognized doctrine of federal comity, which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys.*, 678 F.2d at 94-96 (affirming the dismissal of the second filed lawsuit).  "(T)he 'first to file' rule normally serves the purpose of prompting efficiency well and should not be disregarded lightly." *Pacesetter Sys.*, 678 F.2d at 95 (quoting *Church of Scientology of Calif. v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

EllisLab filed its amended complaint on April 23, 2012.  (Am. Compl., ECF No. 5.)  In support of Defendant's Motion to Dismiss Amended Complaint or in the Alternative to Transfer, Gippy's filed a complaint seeking declaratory relief in the United States District Court for the District of Minnesota on May 2, 2012.  (Def's Mot. to Dismiss, ECF No. 9.)

The similarities between this matter and Pacesetter Systems make that decision particularly relevant.  In that case, the first filed lawsuit made substantive claims and the second filed lawsuit simply requested declaratory relief on the same issues addressed by the substantive claims in the first lawsuit.  *Pacesetter Sys.*, 678 F.2d at 94.  In dismissing the second lawsuit, the court criticized the defendant for using the Federal Declaratory Judgments Act in an attempt "to remove the ongoing litigation from the forum selected by the plaintiff." *Id.* at 97.  As in Pacesetter Systems, the first-filed lawsuit, filed by EllisLab, makes substantive allegations while Gippy's subsequent lawsuit involves the same parties and the same issues while only seeking declaratory relief.  In keeping with Pacesetter Systems, EllisLab urges the Court to recognize Gippy's filing as a bald attempt to upset the forum selected by EllisLab as plaintiff, a forum

where Gippy's is subject to personal jurisdiction, and to deny Gippy's motion to dismiss

EllisLab's amended complaint.

**C.    Gippy's has not proven that the United States District Court of Minnesota is an adequate alternative forum because the facts do not support that court's exercise of jurisdiction over EllisLab.**

In attempting to prove that Minnesota is a more appropriate forum, Gippy's admitted that

this Court has jurisdiction over it.  To make its argument for Minnesota jurisdiction over

EllisLab, Gippy's has to rely on the same factors (nationwide reach, local customers, marketing

to the forum state, etc.) that EllisLab has cited to support jurisdiction in Oregon over Gippy's.  In

which case, jurisdiction would be appropriate either here or in Minnesota.  Because EllisLab

filed here first, this Court has jurisdiction.

Comparing EllisLab's connections with Minnesota shows that there is a weaker

connection between EllisLab and Minnesota than there is between Gippy's and Oregon.

EllisLab is not registered to do business in Minnesota.  (Ellis Decl. ¶ 20.)  EllisLab does not have

a registered agent in Minnesota.  (*Id.* ¶ 21.)  EllisLab has no physical presence in Minnesota.  (*Id.*

¶¶ 17, 24.)  Ellis Lab does not lease or own real property in Minnesota or any other location.  (*Id.*

¶ 24.)  None of EllisLab's employees are located in Minnesota and never have been.  (*Id.* ¶ 17.)

Ellis lived in Oregon from November 2002 to 2010 and three key employees of EllisLab

currently live in Oregon.  (*Id.* ¶¶ 16, 18.)  Neither Ellis, nor any of EllisLab's employees have

traveled to Minnesota to conduct any business with anyone from Gippy's.  (*Id.* ¶¶ 22, 23.)

Applying the same factor presented by Gippy's (while recognizing that this factor appears out of

date), EllisLab has never targeted any print, radio or television ads to Minnesota.  (*Id.* ¶ 10.)

**D.    If EllisLab's contacts with Minnesota are sufficient to establish jurisdiction there, then Gippy's stronger contacts with Oregon are sufficient to establish jurisdiction here.**

In determining whether the convenience of parties and interests of justice weighs in favor

of transfer, the Court should weigh a number of private and public interests.  *Decker Coal Co.*,

805 F.2d at 843.

**Page 23 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

Private interest factors include the following:

      (1) The plaintiff's choice of forum;

      (2) The respective parties' contacts with the forum;

      (3) The contacts relating to the plaintiff's cause of action in the chosen forum;

      (4) The differences in the costs of litigation in the two forums;

      (5) The availability of compulsory process to compel attendance of unwilling non-party witnesses, and

      (6) The ease of access to sources of proof.  *Id.*

The public interest factors include the following:

      (1) The relative congestion of the calendars;

      (2) The avoidance of conflict of laws issues;

      (3) The interest in having a diversity case tried in a forum familiar with the law that governs the action; and

      (4) The avoidance of unnecessary conflicts of law problems.

*Miskow v. Boeing,* 664 F.2d 205, 208 (9th Cir. 1981).  In weighing the factors, the standard to be applied is whether a defendants has "made a 'clear showing of facts which either (1) establish such oppression and vexation as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.'"  *Cheng*, 708 F.2d at 1410 (quoting *Miskow*, 664 F.2d at 208).

      As to the first private interest factor, as discussed above, the plaintiff's choice of forum should prevail.

      As to the second factor, Gippy's has not made any showing that EllisLab has sufficient contacts with Minnesota to support transfer.  In fact, the facts presented by EllisLab show otherwise.

**Page 24 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

As to the third factor, as discussed above, EllisLab has shown that Gippy's has sufficient contacts with Oregon to support this Court's exercise of personal jurisdiction over Gippy's.

As to the fourth factor, as described above, advances in technology allowing witnesses to testify remotely through videoconferencing and the ability to access documents electronically minimize any costs associated with Gippy's litigating in a forum outside of its home state. The availability of videoconferencing also addresses the fifth factor. And, electronic access to sources of proof addresses the sixth factor.

As to the public interest factors, the parties cannot speak to the congestion issues, but none of the other issues appear present in this matter.

Without conceding that Minnesota is an adequate alternative venue, considering the private and public interest factors cuts in EllisLab's favor. Gippy's motion in the alternative to transfer this matter to Minnesota should be denied.

## CONCLUSION

For the foregoing reasons, Gippy's motion to dismiss or transfer should be denied.

DATED this 29th day of May, 2012.

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.


By:    /s/ Stacy R. Owen
_____
Matthew A. Levin, OSB #003054
MattLevin@MHGM.com
Stacy R. Owen, OSB #074826
StacyOwen@MHGM.com
Of Attorneys for Plaintiff Ellis Lab, Inc.

ELLIGI\300949_2

**Page 25 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER**

## ATTORNEY CERTIFICATE OF SERVICE
## AND COMPLIANCE WITH L.R. 7-2(b)(2)

I hereby certify that on May 29, 2012, I have made service of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER** on the party/ies listed below in the manner indicated:

Christopher K. Sandberg
Lockridge Grindal Nauen P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2159

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email
- ☒ Electronically via USDC CM/ECF system

Jeffrey A. Bowersox
Bowersox Law Firm, P.C.
5285 SW Meadows Road
Lake Oswego, OR 97035

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email
- ☒ Electronically via USDC CM/ECF system

I further certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,343 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 29th day of May, 2012.

*/s/ Stacy R. Owen*

_____
Stacy R. Owen, OSB #074826
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**