Jeffrey A. Bowersox, OSB #81442
BOWERSOX LAW FIRM, P.C.
5285 Meadows Rd., Suite 320
Lake Oswego, OR 97035
PH:  (503) 452-5858
Fax: (503) 345-6893
Jeffrey@bowersoxlaw.com

Christopher K. Sandberg, MN Reg. No. 95485
*Admitted Pro Hac Vice*
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
PH: (612) 339-6600
Fax: (612) 339-0981
Email: cksandberg@locklaw.com
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| ELLISLAB, INC., an Oregon corporation,<br>     Plaintiff,<br>v.<br><br>GIPPY'S INTERNET SOLUTIONS, L.L.C.,<br>    a Minnesota limited liability company,<br>     Defendant. | CV No.: 3:12-cv-00432-HU<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**<br><br>Oral Argument Requested |

1. General Jurisdiction Cannot Be Found Here.

The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.2004), *see also, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir.2011). Where a defendant had marketed its services to California students and educational institutions, had three hundred registered users and two paid subscribers in the forum state, and maintained a "highly interactive" website, general jurisdiction could not be found under the "exacting" standard necessary to establish general jurisdiction. That defendant had no offices or staff in the forum state, was not registered to do business in the state, had no registered agent for service of process there, and paid no state taxes in the forum state. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,1074 (9th Cir. 2011).

  a. The Miniscule Amount of Business Done by Gippy's with Oregon-billed Customers Does Not Create Meaningful Contacts.

Gippy's interactive website and its few Oregon customers do not establish contacts sufficient for general jurisdiction. To determine whether a nonresident defendant corporation's contacts are sufficiently substantial, continuous, and systematic for general jurisdiction to exist, a court must consider their longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets. "Under the *Zippo* test, it is possible for a Web site to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not substantial.

Page 2 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

This is untenable in a general jurisdiction analysis." *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 712 (8th Cir.2003); *see also Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (The *Zippo* test "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction.")

Without a signal from a non-resident defendant of its intent to "sit down and make itself at home" in the forum by cultivating deep, persistent ties with forum residents, general jurisdiction based on the accessibility of an interactive website "would expose most large media entities to nationwide general jurisdiction. That result would be inconsistent with the constitutional requirement that 'the continuous corporate operations within a state' be 'so substantial and of such a nature as to justify suit against [the nonresident defendant] on causes of action arising from dealings entirely distinct from those activities.'" *Mavrix Photo, Inc. v. Band Tech., Inc.*, 647 F.3d 1218, 1227 9th Cir 2011), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1940).

Ellis goes to some length to construct a demographic and mathematical argument that the **number** of customers with a credit cared billing address in Oregon (since that is the only way Gippy's can conclude that a customer is "in" Oregon, *see* Supplemental Declaration of Nevin Lyne attached hereto ("Lyne Supp. Dec.") at ¶¶3-4) that Gippy's has had over the space of ten years is sufficient to show that Gippy's has engaged in

Page 3 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

"continuous and systematic" contacts with the state. There are four flaws with Ellis's argument.

First, the raw number of customers is not the best measure of the <u>nature</u> of Gippy's contacts with Oregon. The customers with Oregon credit card billing addresses have all been very small customers, taking basic hosting services from Gippy's. As a percentage of Gippy's revenues, those customers represent a fraction of one percent of the total revenues realized by Gippy's. Declaration of Nevin Lyne at ¶¶19-20 ("Lyne Dec.") (attached to Gippy's Memorandum in Support of Motion). As the *Lakin* court explained, non-substantial contacts cannot support general jurisdiction, and the handful of Oregon customers which Gippy's has had over 10 years have never produced substantial revenues.

Second, in no instance has a Gippy's sought out a customer from Oregon to sign up for its services. Lyne Dec. at ¶21. Each of those customers has come to Gippy's rather than Gippy's going after the customer. To inflate that fact into "continuous and systematic" contacts completely distorts the legal standard.

Third, Ellis attempts to twist the fact that Gippy's has "advertised" through website into an argument that since **Ellis** does not do any advertising, the mere existence of Gippy's website constitutes "systematic" contacts. The *Mavrix* decision holds that the accessibility in the forum state of a non-resident, interactive website is not a basis for general jurisdiction. 647 F.3d at 1227.

Page 4 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

Fourth, customers with credit card billing addresses in Oregon get exactly the same automated emails as all other customers. Lyne Supp. Dec. at ¶5. Those routine and automatic messages are not the sort of substantial contacts which could form the basis for general jurisdiction.

      b. <u>Gippy's Work With Ellis Does Not Support General Jurisdiction</u>.

Ellis postulates two reasons why Gippy's work with Ellis should form a basis for requiring Gippy's to litigate in Oregon: Gippy's sent emails and commission checks to Ellis every month, and Gippy's came to one meeting in Oregon.

The emails and commission checks are such a routine and non-substantive set of contacts that they cannot reach the "substantial" level of business activity needed to support general jurisdiction.

As to the one face-to-face meeting upon which Ellis places so much importance, several factual matters are misstated by Ellis. First, Ellis asserts that, "At Lyne's suggestion, Lyne traveled to Bend, Oregon to meet with Ellis at Ellis's home." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Opposition") at 15. That is simply not the case. The actual reason Mr. Lyne travelled to Oregon was at Mr. Ellis's invitation, because Mr. Ellis felt Mr. Lyne should be there for the initial thoughts and work on **Ellis**' new site designs and getting Gippy's hosting company web site in line with **Ellis'** new design. Mr. Lyne did not travel to Oregon to conduct business negotiations with Ellis. That trip had nothing to do with discussing or negotiating a written agreement between the two companies, nor did the parties come to an oral

Page 5 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

agreement at that meeting over the EngineHosting.com domain. The only sort of "agreement" was that Gippy's was going to use Gippy's Internet Solutions, LLC/gippy.net as its public face. Lyne Supp. Dec. at ¶10.

Regardless of the reason for the trip, one trip to a forum state is not sufficient to allow the exercise of general jurisdiction. *CollegeSource*, 653 F.3d at 1075.

2. There Is Also No Basis For Specific Jurisdiction Present.

The three-part test to analyze when there are the necessary "minimum contacts" is straightforward: (1) the defendant must have performed some act or consummated some transaction within the forum or otherwise "purposefully availed [it]self of the privileges of conducting activities in the forum", the claim must arises out of those forum-related activities, and the exercise of jurisdiction must be reasonable. *See, Bancroft & Masters, Inc. v. Augusta National, Inc.* 223 F.3d 1082, 1086 (9th Cir.2000), *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir.1997). If any of those three requirements are not satisfied, specific jurisdiction does not lie. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

While Ellis spends a good deal of time reviewing *Millennium Enters., Inc. v. Millennium Music, LP,* 33 F. Supp. 2d 907 (D. Or. 1999), that case is of no help in resolving the question before this Court, since the *Millennium* court found no basis for jurisdiction. While the *Millennium* court suggested that there could be specific jurisdiction in the future, it gave no standard or benchmark as to when that might come to pass.

Page 6 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

Similarly, the *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.,* 105 F. Supp. 2d 1142 (D. Or. 2000) case provides no guidance since Gippy's has never engaged in national non-web advertising, and its toll-free number is not used in direct marketing, distinguishing this case from *Tech Heads*. Lyne Supp. Dec. at ¶6.

    a. <u>Gippy's Oregon hosting customers do not support specific jurisdiction</u>.

On the first prong of the test, Gippy's must have consummated some transaction within Oregon where it "purposefully availed" itself of the privilege of conducting activities in the state, giving Gippy's "fair warning" that it could be subject to jurisdiction. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472, 475, 105 S. Ct. 2174 (1985). Gippy's has never done so with any of its hosting customers with Oregon credit card billing addresses.

To the contrary, Gippy's has required every one of its small hosting customers – including all customers with Oregon credit card billing addresses – to agree to the same Master Service Agreement. Lyne Supp. Dec. at ¶7. That Master Service Agreement provides that, "The Agreement is governed by the laws of the State of Minnesota ... Exclusive venue for all disputes arising out of the Agreement shall be in the state or federal courts in Hennepin County, Minnesota. You waive all objections to this venue and agree not to dispute personal jurisdiction or venue in these courts." Master Service Agreement, attached as Exhibit A to Lyne Supp. Dec., at § 28. Thus, rather than entering into any transactions with hosting customers where there could be a chance of becoming subject to Oregon jurisdiction, Gippy's has taken specific steps to ensure that it <u>does not</u>

Page 7 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

take advantage of any privileges in Oregon by operating under Oregon law, and by requiring that jurisdiction be retained in Minnesota.

The claim must be one which arises out of or results from the defendant's forum-related activities. *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Gippy's simply has no Oregon forum-related activities as to its hosting customers. All of the work related to those customers is done outside Oregon – the physical hosting of the websites, website development and administration, billing and customer support take place in Minnesota, Washington, Texas, Missouri, California, or Virginia. Lyne Dec. at ¶¶4-8.

And finally, the court's exercise of jurisdiction must be reasonable. *Id*. On this subjective point, Gippy's notes that there are no physical goods sold and moved to Oregon as part of its business, nor are any electronic files shipped to an Oregon destination. More than just electronic communications or sales of <u>services which are not delivered in Oregon</u> is needed to establish specific jurisdiction. In *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir.1984) it took the combined weight of different factors support a finding of specific jurisdiction (after general jurisdiction was denied): the defendants solicited a distributorship agreement in forum state, the defendants visited the forum state a number of times, the purchase agreements between the parties contained an Arizona choice of law and forum provision, the defendants purchased spare parts from the plaintiff in the forum state, and the defendants sent many letters, telexes, telephone calls to the forum state. 743 F.2d at 1332-1333. That sort of integrated set of factors is

Page 8 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

lacking here, and exercising specific jurisdiction without a similar collection of factors would be unfounded.

    b. <u>Gippy's work with Ellis also does not support specific jurisdiction</u>.

  The same three-prong test must be used to evaluate Gippy's relationship with Ellis. Gippy's has not "solicited" any agreement with Ellis in Oregon, but rather the parties mutually decided – in California in 2002 - that Gippy's would make significant investments outside of Oregon for hosting services.  Ellis has never made any portion of the investments needed for the hosting services Gippy's has operated and shared revenues with Ellis on, in the succeeding 10 years.  Lyne Dec at ¶9, Lyne Supp. Dec at ¶2.

  As admitted by Ellis, there was one and only one time when a representative of Gippy's came to Oregon (at Ellis' request) and none of the business issues raised in the Complaint were negotiated at the one meeting.  Lyne Supp. Dec. at 10.

  Nothing agreed to by the parties ever contained an Oregon venue clause.  To the contrary, Gippy's has consistently insisted on a Minnesota venue provision (and Minnesota choice of law clause) in its hosting agreements and would have insisted on a similar clause with Ellis had the issue arisen. Lyne Supp. Dec. at ¶7, Exhibit A.

  Finally, while there have clearly been communications between the parties by email, it is not possible to know which of the emails Gippy's has received from Rick Ellis have been when he was actually in Oregon. In context, the actual volume of communications between the parties is modest.  Nevin Lyne, Gippy's Founder and Director of Technology, does not believe he has had direct conversations with Rick Ellis

Page 9 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

more that a few dozen times, and does not recall ever being on a phone call with Rick Ellis. He can remember meeting with Rick Ellis in person six (or at most seven) times in 10 years. Lyne Supp. Dec. at ¶8-9; 11. Those limited contacts are not sufficient.

   3. <u>Ellis' Trademark Claims Cannot Form A Basis For Jurisdiction.</u>

Ellis attempts to argue the validity of its trademark claims in the context of this Motion, hoping to thereby bootstrap its jurisdictional claim. Ellis claims the allegedly infringing activities were "aimed at Ellis" in Oregon, objects to Gippy's' "unlicensed use" of "EngineInternet," "EngineHosting," and "ExpressionEngine", and theorizes that such use is likely to cause confusion among consumers in this District. Opposition at 17. The fundamental problem with this attempt to create jurisdiction is that Ellis' "unlicensed" trademark claims are baseless.

In January 2007, the parties discussed at length Gippy's rebranding of its hosting service. After discussions with Ellis personnel, Gippy's proposed the trade name HOSTIGNITER. Rick Ellis objected to that name, on the grounds that the name was "way too close to CodeIgniter", one of Ellis' trade names. In response, Gippy's again consulted with Ellis personnel, and offered the name ENGINEHOSTING. Rick Ellis responded that the ENGINEHOSTING name was "not too bad..." In complete contrast to his earlier objection to HOSTIGNITER being too close to Ellis names, Mr. Ellis complemented HOSTIGNITER as "t[ying] in nicely" with the "motor theme" of some of Ellis' products. Based upon that approval from Ellis – without any indication of concern of confusion – Gippy's moved ahead with registering enginehosting.com and using the

Page 10 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

ENGINEHOSTING name. At no time prior to the demand letter which preceded this lawsuit did Ellis ever object to the use of the ENGINEHOSTING name or suggest there was any confusion in the marketplace, much less in Oregon. Lyne Supp. Dec. at ¶¶12-17, Exhibits B and C.

Indeed, it was Ellis that decided to promote Gippy's services by placing the ENGINEHOSTING name and logo on Ellis' own website. Lyne Supp. Dec at ¶17. To the extent there may have been some confusion about the business relationship of the parties, it was Ellis' own doing. Ellis' assertion that that there is a trademark claim available to it is a makeweight argument that cannot withstand scrutiny, and should not be permitted to be used as a vehicle to manufacture jurisdiction.

4. Gippy's Alternative Relief Is Proper.

Gippy's has requested that, if the Court declines to dismiss Ellis' Complaint, it transfer this action to the District of Minnesota for consolidation with Gippy's pending declaratory judgment action filed there.

Ellis makes the astounding argument that the parties written e-mail agreement in 2007 did not replace and supersede the prior agreements between the parties. Opposition at 21. That argument cannot be squared with the facts of the written agreement itself, which changes the fundamental revenue-sharing terms of Gippy's hosting services business. A written agreement setting new revenue-sharing terms to be observed going forward **must** supersede and replace whatever revenue-sharing terms were in place and being followed before the date of the written agreement. Since it is those revenue-

Page 11 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

sharing terms which form the heart of Ellis' claim that Gippy's has failed to pay Ellis large sums of money, the 2007 written agreement is the binding contract.

Ellis has suggested a transfer is barred by the "first to file" rule. Opposition at 28. However, that rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 678 F.2d at 95 (9th Cir. 1982), *Best Western Intern., Inc. v. Patel*, 2008 WL 608382 at *6. A court, therefore, "can, in the exercise of [its] discretion, dispense with the first-filed principle for reasons of equity." *Id*, quoting *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir. 1991).

A court may refuse to apply first-to-file rule if the balance of convenience weighs in favor of the later-filed action. *See, Z–Line Designs, Inc. v. Bell'O Internat'l, LLC*, 218 F.R.D. 663, 665 (N.D.Cal. 2003). Here, all the evidence needed to consider Ellis' core claim re underpayment is in Minnesota and the witnesses who would testify on that claim are both in Minnesota. Lyne Supp. Dec. at ¶¶18-20. In addition, forcing those two witnesses, who are the sole owners of Gippy's, to travel to Oregon to testify and defend this action would be both greatly inconvenient and detrimental. They have a young child at their home in Rochester, Minnesota, and they are the key employees of the business – the disruption to both their personal and business lives would be considerable. Lyne Supp. Dec at ¶¶21-22. The balance of convenience here is so great that the first-filed rule should not be applied.

Page 12 –DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

Finally, the issues in the two cases are not identical. Ellis has simply asserted that it has been underpaid, without even admitting the existence of the parties' written agreement, and has now taken the position that the agreement is of no consequence. In the Minnesota case, Gippy's has squarely posed the question of the validity and scope of the parties' written agreement.

Taken together, there are sufficient grounds for the Court to order a transfer to Minnesota if dismissal is not granted.

## **CONCLUSION**

Gippy's motion to dismiss should be granted for want of jurisdiction in Oregon, or in the alternative the case should be transferred to the District of Minnesota.

// // // //

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 3,246 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED: June 12, 2012.

    Respectfully submitted,

    By: /s/ Jeffrey A. Bowersox
    Jeffrey A. Bowersox, OSB #81442
    BOWERSOX LAW FIRM, P.C.
    5285 Meadows Rd., Suite 320
    Lake Oswego, OR 97035
    PH: (503) 452-5858
    Fax: (503) 345-6893
    Email: Jeffrey@bowersoxlaw.com

    Christopher K. Sandberg, Reg. MN No. 95485
    Admitted *Pro Hac Vice*
    100 Washington Avenue South, Suite 2200
    Minneapolis, MN 55401
    PH: (612) 339-6600
    Fax: (612) 339-0981
    Email: cksandberg@locklaw.com
    ATTORNEYS FOR DEFENDANT
    GIPPY'S INTERNET SOLUTIONS, LLC

# CERTIFICATE OF SERVICE

      I hereby certify that on June 12, 2012, I have made service on the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER** on the party/ies listed below in the manner indicated:

| | |
|---|---|
| Matthew A. Levin | ☐ U.S. Mail |
| Stacy R. Owen | ☐ Facsimile |
| Markowitz Herbold Glade & Mehlhaf, P.C. | ☐ Hand Delivery |
| 1211 SW Fifth Avenue | ☐ Email |
| Suite 3000 Pacwest Center | ☒ Electronically via CM/ECF |
| Portland, OR 97204-3730 | |

      DATED this 12th day of June, 2012.

    /s/ Jeffrey A. Bowersox
Jeffrey A. Bowersox, OSB #81442

ATTORNEYS FOR DEFENDANT
GIPPY'S INTERNET SOLUTIONS, LLC